JAMES R. WOOLDRIDGE et al., Appellants, v. D. H. SMITH.

### Division One, May 31, 1912.

1. **GRAVE YARD: Public and Private: Dedication: Limitation.** Where the owner of land marked out no plot of ground for a burial place, and in no way attempted to segregate a burying ground from the general farm, and there was no attempt at a dedication to the public and no evidence of an acceptance by the public, and only he and his children and some grandchildren and one stranger, nine in all, are buried there, there was no established public grave yard, nor yet a private family burying ground established in the manner required by and recognized by statute, and the law applicable to an established public grave yard, namely, the law relating to the dedication of land to a public use by the owner thereof, limitations, prescription, easement, and the right of those related to persons buried there to have it maintained as a cemetery, does not apply.

2. ————: **Desecration: Injunction.** Relatives of the dead buried in private family burying ground established in the manner prescribed by statute, have a right to enjoin the desecration of the graves therein; but it must be such an established private family burying ground as is recognized by the law.

3. ————: **What is Private Family Grave Yard.** The mere burying of the dead on land owned by a citizen in fee simple and his own subsequent burial there does not create a private family burying ground; and if the land is conveyed by his descendants, without any reservation, the courts are powerless to enjoin a desecration of the graves, however inhuman such act of desecration may impress them. There is no such thing

as the dedication of property to private use. The statute (Sec. 1303, R. S. 1909) provides that the owner of land may give permanency to a family burying ground by conveying it to the county court and recording his deed; but if he makes no such conveyance, and the land is conveyed without reservation, the courts have no power to afford a remedy against desecration. The law contemplates but two kinds of cemeteries, public and private family burying grounds; and private family burying grounds can be permanently established only in the way designated by said statute, or (possibly) by reservation in the deed conveying the land of which it is a part.

4. ————: ————: Prescription: Easement. The descendants of the owner of the plot of land in which he and others of his descendants were buried, which was in no wise segregated from the general farm and which was not conveyed to the county court and the deed recorded, cannot, as against the grantee in a deed conveying the same without reservation, hold possession by prescription. They have no right to the fee which has passed to a purchaser from the owner's heirs; and they have no such right or interest or estate to any part of said ancestor's land so granted as gives them an easement by prescription. There is no such thing as a dominant estate to which an easement right can attach. There is no easement appurtenant, because no dominant estate. If there were an easement in gross, it would not avail the living descendants, because such easements do not pass by descent.

Appeal from Pettis Circuit Court.—*Hon. Louis Hoffman,* Judge.

AFFIRMED.

*George F. Longan* for appellants.

No particular form or ceremony is necessary to dedicate land for the purpose of a cemetery. An express setting apart of land for such a purpose by the owner may constitute a dedication of the land as a burial ground and where there was evidence of an intent to dedicate, no particular form is necessary. Property which has been notoriously used for upwards of twenty years as a burial place will be presumed to have been dedicated as such and one asserting legal title to the land will be estopped from claiming it, by

his own acquiescence. Wormley v. Wormley, 207 Ill. 411; Boyce v. Kalbaugh, 47 Md. 335. The title to an easement of a burial lot may be acquired by prescription where adverse possession for that purpose is held for the statutory period. Adverse possession of a burial lot is held by its use for a burial place with or without enclosure as long as gravestones stand marking the place as a burial ground. Hook v. Joyce, 21 L. R. A. (N. S.) 96. The use of grounds for burial purposes is a public use and there may be a common law dedication of such grounds to such use. Ten years adverse possession and use of a tract of ground dedicated to a public or charitable use for burying the dead will not give the owner of the fee the right to interfere with such use. The Statute of Limitations does not apply to such a tract and is no defense to an injunction to enjoin the owner of the fee from desecrating the graveyard and the graves therein; and the graveyard is none the less such, because for a quarter of a century no one has been buried there. Tracy v. Bittle, 213 Mo. 302.

*J. T. Montgomery* for respondent.

(1) Neither these plaintiffs nor their ancestors have complied with Sec. 1303, R. S. 1909. This statute was first enacted in the year 1857. 2 Laws 1857, p. 41. The act of 1857 was amended in 1859. Laws, 1859 p. 27. The statute has remained substantially the same from the date of its first enactment, up to the present time. Family burying grounds can in this State be secured in no other manner than that pointed out by the above act. *Expressio unius est exclusio alterius* is a well known maxim of statutory construction. (2) This plot of ground has never been reserved in any deed as a family burying ground or public burying ground. (3) Powhatan Wooldridge could not dedicate this plot of ground to himself and his descendants as a fam-

ily burying ground (except in the manner pointed out by the statute). He did not dedicate it to the public as a public burying ground, neither did the public ever accept it as such. There was no dedication of this plot of ground for a public graveyard by grant or by common law. There can be no dedication under the common law even for private uses public in their nature, where the enjoyment is restricted to a limited part of the public. 9 Am. & Eng. Ency. Law, 23, note 8; Todd v. Railroad, 19 Oh. St. 524; Railroad v. Whiteham, 155 Ill. 514; Trustees M. E. Church v. Hoboken, 33 N. J. L. 13; Coberly v. Butler, 63 Mo. App. 556. These plaintiffs have no right of burial in said plot of ground either by grant or prescription. 2 Washburn Real Property, (4 Ed.) p. 301. Easement by prescription denotes adverse possession. These plaintiffs have never claimed this ground adversely up to the year 1890, because it was in their possession. The defendant has been in peaceable possession of the land in question since the year 1890, claiming title against the world. The authorities cited in plaintiffs brief are not in point.

GRAVES, P. J.—Bill in equity seeking injunctive relief. Plaintiffs are lineal descendants of Powhatan Wooldridge who died in the year 1862. The bone of contention is the right to a tract of ground ten by thirty feet on which are the graves of the said Powhatan Wooldridge, his wife, and several of his relatives.

The petition charges that the plaintiffs "are and have been for more than twenty years the owners and in possession of" the tract of land in dispute. The petition further avers "that said tract of land has been for more than twenty years used exclusively as a family burying ground by the plaintiffs and their ancestors. That all the graves on said ground have been during all the time since the burial of said bodies in-

closed with fences, and these plaintiffs have been in peaceable and adverse possession of said land for more than twenty years.'' The petition then further proceeds:

''Plaintiffs state that the defendant owns the land surrounding and adjoining to the said tract of land so as aforesaid described as containing the bodies of the ancestors and relatives of these plaintiffs. That these plaintiffs are desirous of inclosing with a substantial fence the graves of their said ancestors and relatives, so as to prevent them from the intrusions and molestations of the animals and beasts that otherwise have access to them.

''Plaintiffs state that the defendant on or about the —— day of March, 1907, without authority of law and in violation of the rights of these plaintiffs, removed the fences which inclose a part of the said graves, thereby turning said graves or burial places into pasture belonging to the defendant, and used by him as a hog lot or pasture. That defendant threatens and is about to remove the fences inclosing the other graves located on said tract of land, and denies to plaintiff the right and privilege of erecting around said graves a fence or wall inclosing the same. That plaintiffs have notified the defendant of their rights in the premises, and warned him to desist from removing the said fences, and informed him that they would ·erect around said graves a wall or fence inclosing the same. But the defendant refused to permit them to erect said wall or fence, and threatens to remove the fence surrounding the remainder of said graves.

''Plaintiffs state that if they are not permitted to erect a wall or fence inclosing the said graves, and the defendant is allowed to remove the said fences now inclosing a part of said graves, they will be unprotected and exposed to the ravages and desecration of the hogs and other live stock belonging to this defendant, and that the injury and damage to plaintiffs will

be irreparable; and that the injury and damage would not be susceptible of compensation in damages; and that plaintiffs are without an adequate remedy at law.

"Wherefore plaintiffs pray that the defendant, his agents, servants and employees be perpetually enjoined from removing any fence or wall enclosing said graves, and from interfering with or molesting in any way these plaintiffs in building and erecting a wall or fence inclosing the said tract of land so as aforesaid described containing the graves of the ancestors and relatives of these plaintiffs, and for such other and further relief as to the court shall seem just and proper in the premises.".

The answer is (1) a general denial, (2) the Statute of Limitations for adverse and continuous possession for more than 18 years, and (3) that plaintiffs have no rights either in law or equity, because "said plot of ground has never been set apart according to law for a family burial place."

Upon trial had, plaintiffs failed to get relief and from this adverse judgment bring the case here.

The facts are practically indisputed. Powhatan Wooldridge, mentioned supra, was the original owner of a farm of which the small tract in dispute was a part. He is the father and grandfather of those buried there, with the exception of one stranger. There are some nine graves in all. There were no tombstones, but there were markers of common field stone and the graves were fenced. In one instance three graves were inclosed within a picket fence. Other graves were separately inclosed by rail pens. No sign distinguished one grave from another. The last interment was the body of Jno. M. Wooldridge, a son of Powhatan, in about 1880. The first was in or about 1856 or 1857.

The lands of Powhatan Wooldridge went by descent to his children, and by voluntary partition was divided. The forty acres upon which these graves are

located passed to a daughter, Elvira and from her by deed, without reservation, to a son, John M., who died in 1880, and the land passed by descent to his children. In 1889 the children of Jno. M. deeded, without reservation, the land to defendant D. H. Smith, who took possession in March, 1890, and has been in continuous possession thereof ever since. Smith did not know of the graveyard at the time of his purchase. Such graves were obscured by brush and undergrowth so that they were not easily discernible, but might have been discovered by examination of the premises. No fixed tract was ever marked off by Powhatan Wooldridge for a graveyard, and no public road touched upon the tract, although there was a private way leading to it. Since the possession of Smith, plaintiffs have never been permitted to exercise any control over the ground in dispute. Such in brief are the facts.

I. In the brief filed in this court the plaintiffs undertake to plant themselves behind the case of Tracy v. Bittle, 213 Mo. 302. That case was written with care after a thorough research of all the authorities. The known lax methods used in the earlier days for the establishing of public burying grounds prompted the writer to the use of diligence and care in outlining the doctrine of the law announced in that case. But that case it not this case. We were dealing there with a public graveyard, and not with a private graveyard as these plaintiffs in their petition aver this one to be. In the Bittle case we held (1) that the evidence showed that the land in dispute had been dedicated to a public use by the owner thereof; (2) that the public could acquire an interest in a graveyard by a common law dedication, as well as by deed; (3) that the Statutes of Limitation had no bearing upon grounds dedicated to a public or charitable use, and that a cemetery was such a use; (4) that there was no abandonment of such public use so long as the dead remained buried therein, and

the grounds were maintained in condition to evidence its use; (5) that mere ceasing to bury in the grounds did not change the character of the use, so long as such grounds were kept up as the home of the dead; (6) that parties related to persons buried in the grounds had such an interest, the maintenance of a public use, that they could sue to protect such use; and (7) that injunction was a proper remedy to prevent the owner of the fee from thwarting the public use and desecrating the graves of the dead in such public burying ground.

This case does not avail the plaintiffs here for two reasons. First, they do not charge the graveyard now under consideration to be a public graveyard. They aver it to be a private burial ground. Therefore, by their pleadings they have not brought themselves within the beneficent rules of the Tracy case. Secondly, their proof fails to show such acts by the older Wooldridge as would amount to a common law dedication of any particular tract of land to a public or charitable use, and the acceptance of the same by the public. When the conceded facts of this case are fully measured up it is seen that they fall far short of showing a dedication to public use. An examination of the facts tending to show a dedication in the Tracy case, and in the other cases cited in that opinion, will demonstrate the absence of the necessary facts in the case at bar. In this case Wooldridge marked out no plot of ground for a burial ground. He in no way attempted to segregate a burying ground from the general farm. There is practically no evidence of a dedication to the public or of an acceptance by the public. So that we conclude that both by pleading and proof, the question of a public graveyard is not in this case. If plaintiffs have any rights in the premises they must be sought from another source.

II.   One theory of plaintiff's petition seems to be
that there was established a private family burying
ground, and that they as relatives of the dead ones
buried therein have a right to enjoin the desecration
of the graves therein.  We think the latter proposition
may be conceded as good law.  In other words, if in
law and fact this is a private family burial ground,
these plaintiffs are not without remedy to prevent the
desecration of the graves.  Is this such a private fam-
ily burial ground, within the meaning of the law, as to
give the plaintiffs a standing in equity?   Alleged
desecration of the last resting place of the dead al-
ways appeals strongly to the courts.   With firm
voice, in cases wherein we had power to act, this court
has chided the heartless spirit which dared such a
desecration.   Desecration of graves is a heartless act
bespeaking the absence of humanity in the breast of the
desecrator.   Gladly would the courts place their cor-
recting hand upon the heads of all grave desecrators,
if the cold law in many cases did not stay it.   In some
cases the courts are left powerless, and this seems to be
one of them.   If A bury his wife upon his farm and
then sells the farm without reservation, what power
can protect that grave, save the humane heart of the
grantee in the deed?   If he bury his whole family there
is the rule different?   We think not.   The law contem-
plates two classes of graveyards, public and private.
Such has been the statute law of this State.   The first
kind we considered in the Tracy case, supra.   The
latter we must consider here.   There is no such thing
as the dedication of property to private use.   The
proprietor of land can dedicate it to a public use, and
if there is an acceptance by the public rights are ac-
quired therein by the public.   On this theory we say
that a public graveyard may be established with-
out a deed from the original owner.   Private burial
grounds, however, must be establised in a different

way. In Misssuri we have a statute prescribing the
method. Section 1303, Revised Statutes 1909, reads:

"Any person desirous of securing family bury-
ing ground or cemetery on his or her lands, may con-
vey to the county court of the county in which the land
lies any quantity of land not exceeding one acre, in
trust for the purpose above mentioned, the deed for
which to be recorded within sixty days after the con-
veyance; and such grounds, when so conveyed, shall
be held in perpetuity as burying grounds or cemeteries
for the use and benefit of the family and descendants
of the person making such conveyance."

This statute was first enacted in 1857, and has
only been slightly changed by amendment. The law-
making power realized that a landowner could not de-
dicate property for such use. It realized that such
use could only be created by deed or reservation in a
deed, and so impressed provided this statutory method
of creating such a use. Under our statute we doubt
whether a family burying ground could be established
by a mere reservation in a deed, yet we need not de-
cide the point because not involved here. Such a
reservation of course would convey the title and inter-
est reserved to the parties for whom it was reserved,
and in this way amounts to the preservation of such
grounds as a graveyard. But, as said, this question
need not be discussed.

The elder Wooldridge did no acts to create a pub-
lic cemetery, nor did he establish a private or family
burying ground in the manner pointed out by the stat-
ute. He at all times was possessed of the fee un-
hampered by any act of his in the premises. By this
we mean any act which could be legally asserted
against his grantees without express reservation in the
deeds of conveyance. No such reservations appear.
The title he possessed has passed to defendant. The
statute as to family burying grounds not only requires
a deed, but it requires the *record* of such instrument.

To our mind this statutory method is exclusive, and if so, there is no family burying ground in which plaintiffs could have any legal rights. The statute may have a double purpose, but it evidently was intended to protect subsequent purchaser without actual notice, by requiring the deed creating the burial ground to be placed of record.

III. Another theory argued by plaintiff, and perhaps well covered by their petition, is that they can hold possession by prescription. This presents a novel proposition. In support of it we are cited to a Kentucky case, Hook v. Joyce, 21 L. R. A. 96. In that case one Clark was the owner of certain land, when defendant's father was buried there. Later his brother was buried there. Defendant's mother caused tomb stones to be placed at the graves and had the same fenced. She died and was buried at the same place. The defendant in the Hook case was the only heir-at-law of the mother, Lucinda Joyce. In 1847, the city of Paducah acquired the land upon which these graves were situated and established a cemetery. The city platted the grounds into lots, and sold the lot upon which defendants father, mother and brother were buried, to the plaintiff Hook. Hook sued for possession and under peculiar instructions from the lower court lost the case, and appealed to the Kentucky Court of Appeals, which affirmed the judgment *nisi*. The court held that the defendant's mother had an easement in the soil which had been acquired by prescription, which easement could not be defeated, but passed by descent to her heirs at law. The court further held that the possession of such easement was held by virtue of the burial of the dead therein, with properly inscribed tomb stones. This language is used:

"But the question arises, what is the nature and extent of the adverse possession required in order to

ultimately ripen into a title to an easement of a burial lot? It seems to us burial of the dead body is the only possession, where claimed and known, necessary to ultimately create complete ownership of the easement, so as to render it inheritable. And as long as it is inclosed as a burial place, or even, without inclosure, as long as grave-stones stand marking the place as a burial ground, the possession is, from the nature of the case, necessarily, and therefore in legal contemplation, actual, adverse, and notorious. Moreover, there cannot be an actual ouster of possession by an intruder, or running of the Statutes of Limitation in his favor, while such gravestones stand there, indicating by inscription the previous burial of another.''

Of this case the learned annotator of L. R. A. in a note says: ''The question in the above case is a peculiar one and seems to be without exact precedent.'' We are not impressed with this case. Under the head of Cemeteries, 6 Cyc. 716, we find this statement: ''No formal deed is necessary to confer the exclusive right to the use of a lot in a cemetery for burial purposes. Oral permission from the proprietors is sufficient.'' An examination of the authorities cited show much diversity of opinion upon the question stated.

Following the paragraph above quoted we find this further satement: ''The title to an easement of a burial lot may be acquired by prescription where adverse possession for that purpose is held for the statutory period.'' In support of this latter doctrine the Hook case, supra, is cited. Following this is the generally conceded doctrine as to cemetery lots:

''The purchaser of a lot in a cemetery, though under a deed absolute in form, does not take any title to the soil. He acquires only a privilege or license to make interments in the lot purchased, exclusively of others, so long as the ground remains a cemetery. Such privilege or license is subject to the police power of the State, in the exercise of which not only future inter-

ments may be prohibited, but the remains of persons theretofore buried may be removed. Therefore when by lawful authority the ground ceases to be a place of burial, a lotholder's right ceases, except for the purpose of removing remains previously buried.''

Going further the same authority says: ''A burial lot is regarded as property in which title may in most cases descend to heirs.''

It must be remembered that these general rules have reference to lots in established-cemeteries. To our mind there is where the Kentucky court became confused. At the date of the action the ground was in fact a cemetery, and if it were not for the recited facts as to when the bodies were buried in the lot in question, i. e., at a time prior to the establishment of the cemetery and when the ownership of the land was in Clark, we can see where the general rule above quoted might be made to apply. But from the vague statement of the facts in the opinion, we are lead to think that the court intended to hold that easement was created in favor of Lucinda Joyce upon the land, by the burial of the bodies therein and the continued use of the lot in that way for the prescriptive time of fifteen years. If by the opinion it is meant to be held that the prescriptive term began when Clark's land was invaded, we can not agree to the doctrine. It may be (a question we do not decide, because outside of the case in hand) that if after the Paducah Cemetery was platted persons had buried their dead in a certain lot, and the graves were readily discernible, and this use had continued for the prescriptive term, then a subsequent purchaser of the lot, who under the general rule of law only purchased a right or privilege to bury in the lot, might be precluded from the possession of lot by the holder of the prescriptive use. This assumed case is not the Hook case, as we understand it, nor is it the case at bar.

Whilst the term easement might be applied properly to a lot in an established cemetery, because of the peculiar character of the holding of such property, can the term be applied to a tract of ground carved out of a farm upon which a grave has been dug and used? Can the term easement be used to apply to a small area occupied by a grave or graves outside of any burial ground, either public or family? Our statutes only recognize two kinds of burial grounds, i. e., public and family burial grounds. If the graves in question in this case were in either a public or family burial ground, as such burial grounds are defined by the law, there would be no question of plaintiff's right to relief. But have they a status under the facts here? Broadly speaking an easement contemplates a dominant and a subservient estate. Excluding from view the fact that the possessory right to a lot in a cemetery is denominated by some writers as an easement which is inheritable, and going to the status of the plaintiffs in the case at bar, what interest, estate or right have they to any part of their grandfather's land, which has passed by inheritance or deed to the defendant? That they have no title or interest in the fee is clear. Can it be said that they have an easement in the land by prescription? We think not.

In 14 Cyc. 1139, the essential elements of an easement are thus stated: "The essential qualities of easements are: (1) They are incorporeal; (2) they are imposed upon corporeal property and not upon the owner of it; (3) they confer no right to a participation in the profits arising from such property; (4) they are imposed for the benefit of corporeal property; (5) there must be two distinct tenements—the dominant, to which the right belongs, and the servient, upon which the obligation rests. In order to constitute an easement there must be two estates, the one giving and the other receiving the advantage, denominated respectively the servient and the dominant estates."

The right to bury in a given tract of land is not a right "imposed for the benefit of corporeal property." In such case there is no such thing as a dominant estate to which the easement right can attach. The mere right to bury upon a tract of land in no sense fills the general definition of the term "easement."

But we have what is recognized in the law as rights or easements in gross. These are rights which rest upon lands in favor of a person or individual, and of course there is no dominant estate. But rights or easements of this character are not usually assignable, nor do they pass by descent. [14 Cyc. 1140.]

Viewing the law of easements from all angles we can see no remedy for these plaintiffs. There is no easement appurtenant, because no dominant estate. If a right or easement in gross it would not pass by descent and hence plaintiffs have no standing.

We have held that one having relatives buried in a public graveyard can in equity prevent the desecration of their graves. This, however, is on the theory that the land has been dedicated to a public use, and any interested party has a right to protect such public use. On the other hand, if the graves were in a family burying ground, then the rights of the parties to protect the graves are secured by the terms of the deed required to be executed and spread of record. [Sec. 1303, R. S. 1909.]

But where neither of these conditions exist we can see no remedy. If it can be said that the Hook case from our sister State holds that the placing of a body in a grave upon the land of another, and permitting it to remain there for the prescriptive term, creates an easement by prescription, which easement will descend to the legal heirs, for all time, then we do not agree to the doctrines of that case. The bill in this case avers that defendant has denied plaintiffs all rights, except the right to remove the bodies. Of this right they had better avail themselves. To them it may

seem harsh that they cannot be permitted to inclose the graves of their forefathers, to the end that their dust might rest in peace. So it seems harsh to us, but the harshness is not of our making. Defendant is standing upon the cold law, and that we must give him, if he asks and insists.

It is not the humane idea which adjudicates the rights here involved, but the cold law as demanded by defendant. Under the law we see no remedy for plaintiffs, and with regrets we so say. Let the judgment be affirmed. All concur.