F. E. MOUNT, RESPONDENT, v. J. H. YOUNT, APPELLANT.*

In the Springfield Court of Appeals. Opinion filed March. 2, 1926.

**1.—Cemeteries.** There are but two classes of cemeteries, public and private.

**2.—Exemptions—Executions—Cemeteries.** Entombment space in community mausoleum, built in public cemetery owned by city, under sections 8491, 8492, R. S. 1919, **held** a "burial ground in a public cemetery," within sections 1085, 1086, and 1612, and exempt from sale on execution, notwithstanding failure of city to plat that part of cemetery on which mausoleum was erected, under section 1080.

---

*Corpus Juris-Cyc. References: Cemeteries, 11CJ, p. 50, n. 7; p. 60, n. 67 New.

Appeal from the Circuit Court of Scott County.—Hon. Frank Kelly, Judge.

REVERSED AND REMANDED (*with directions*).

*Ward, Reeves & Oliver,* of Caruthersville, for appellant.

(1) The Sikeston City Cemetery is a public cemetery in the city of the fourth class. Secs. 8491 and 8492, R. S. 1919. (2) There are two kinds of cemeteries under the statutes viz: Public and private. This in question is a burial lot in a public cemetery, that is, the mausoleum was a conveyance of a burial lot in a public cemetery and these sections or crypts or burial places in the mausoleum are portions of a public cemetery. Secs. 1085, 1086, 1612, R. S. 1919. (3) Public burial grounds are all exempt from execution and are not subject to sale on execution, regardless of the value, whether it is worth one dollar or one million dollars, if it is a burial ground belonging to one person in a public cemetery under our statutes it, "Shall not be subject to sale on execution, to dower nor to compulsory partition." And a public cemetery may be either made one and dealt like this one or may be any cemetery used by the public for ten years; but the portion of that public cemetery owned by any individual is not subject to execution, regardless of its value. The statute makes it exempt and does not fix any right of sale or execution of any portion over a certain price. Therefore under the statutes the value has nothing to do with defendants' ownership of a lot or burial ground in a public cemetery. Sec. 1085, R. S. 1919. (4) But if it is a private burial ground, the owner of this private burial ground can only exempt "An acre in area or $100 in value." Sections 1085, 1086, R. S. 1919. (5) "A cemetery association owns the fee of lands purchased for the purpose of the association. The persons to whom the lots are conveyed for burial purposes take only an easement—a right to use the lots for such purposes." 1 Bouviers Law Dictionary (3 Ed.), p. 438; Buffalo City Cemetery v. Buffalo, 46 N. Y. 503; People v. Trustees, 21 N. Y. 184; Washlim, Easement, 604; Sohier v. Church, 109 Mass. 21; Price v. Church, 40 Howe, 515. "It resembles the grant of a pew in a church." Jones v. Town, 58 N. H. 462; Sohier v. Church, 109 Mass. 1. "It is in the nature of an easement; so is the right to a burial in a particular burial vault." 22 Beov, 506. In addition to the above law, our general statute on execution provides, "All court houses, jails, clerks' offices or other buildings owned by any county or municipality, and the lots on which they stand or all burial grounds shall be exempt from attachment and execution." Sec. 1612, R. S. 1919. (6) If defendant, J. H. Yount, had owned all Section A of Room

1, in said mausoleum, it could not have been levied upon under the statutory laws of this State, much less where he owned an undivided one-half interest in this Section A of Room 1, the other one-half owned by a member of his family.

*Bailey & Bailey,* of Sikeston, for respondent.

(1) Under Missouri law no property of a debtor is exempt from execution unless made so by Statute, and our Statute provides the conditions under which certain property named by the Statute is exempt. (2) Section 1612, R. S. 1919, exempts burial grounds when owned by a county or municipality along with other property belonging to counties or municipalities against the creditors of the municipality. (3) So-called private burial grounds are not free from the operation of law unless made private burial ground in accordance with the Statute. Sec. 1081, R. S. 1919; Woolridge v. Smith, 243 Mo. 190, 147 S. W. 1019. (4) Public burial grounds exempted by Statute are lands appropriated, set apart, accepted and used as burial grounds for the public. Tracy v. Bittle, 213 Mo. 302, 112 S. W. 45; Woolridge v. Smith, 243 Mo. 190, 147 S. W. 1019.

BRADLEY, J.—This is an appeal from an order overruling motions to quash a levy and set aside a sale thereunder. March 22, 1922, plaintiff obtained a judgment against J. H. and Minnie Yount, husband and wife. Thereafter and before the execution issued Minnie Yount was adjudged a bankrupt. April 24, 1924, general execution issued against defendant J. H. Yount, and thereunder certain property was levied upon. Motion to quash the levy was filed, said motion being based on the ground that the property was not subject to execution. This motion was overruled, and the same day sale was had under the execution and plaintiff purchased at said sale. Immediately thereafter motion was filed to set aside the sale, said motion being based upon the same grounds as in the motion to quash the levy. The motion to set aside was overruled and defendant appealed.

The motions to quash and set aside were based upon the theory that the property levied upon was "burial ground" within the meaning of our exemption statutes respecting burial grounds. [Secs. 1085, 1086 and 1612, R. S. 1919.] The city of Sikeston, a city of the fourth class, in accordance with sections 8491 and 8492, R. S. 1919, owned a public cemetery known as the Sikeston Cemetery. July 9, 1918, the board of aldermen passed an ordinance authorizing the conveyance of a certain described tract or plot in said cemetery to the Missouri-Illinois Mausoleum Company. The tract to

be conveyed was not in the platted portion and was described in said ordinance as follows: "Beginning at a point seven feet south of the southwest corner of lot number 474 and running southwardly one hundred and one feet to a point; thence eastwardly fifty-four feet; thence northwardly one hundred and one feet; thence westwardly fifty-four feet to the point of beginning."

This ordinance further provided that there should be constructed on the above-described tract a community mausoleum in accordance with certain plans and specifications. July 10, 1918, and in accord with said ordinance, the tract or plot of land described therein was conveyed to the mausoleum company. The community mausoleum was constructed on said plot, and on August 11, 1919, defendant J. H. Yount and Hal Galeener, brothers-in-law, jointly purchased for $3500 from the trustee of the mausoleum company entombment space in said mausoleum described as: "Private room number 1 in section A containing ten crypts in Sikeston Mausoleum located in the City Cemetery, Sikeston, Missouri, as per plat on file in the office of the recorder of deeds of Scott county, State of Missouri."

This entombment space described in the deed to Yount and Galeener had the name Yount engraved on one-half thereof and the name Galeener on the other half. No corpse had been placed in this entombment space. It was admitted "that the mausoleum is in the public cemetery" and that the undivided one-half interest in private room number 1 in section A exceeded $100 in value.

Defendant Yount contends that the property levied upon and sold is exempt because it is a *burial ground* in a public cemetery. Plaintiff contends that the property levied upon and sold is at most no more than a private burial ground and being in excess of $100 in value is subject to execution.

Sections 1085 and 1086, Revised Statutes 1919, heretofore referred to, are as follows: Section 1085. "Lands appropriated and set apart as burial grounds, either for public or private use, and so recorded in the recorder's office of the county where such lands are situated, or any burial ground that may have been used as such for ten years, shall not be subject to sale on execution, to dower, nor to compulsory partition: Provided, that the lands so appropriated and set apart as a private burial ground shall not exceed one acre in area or one hundred dollars in value."

Section 1086. "Lands or property, set apart as burial grounds, either for public or private use, and so recorded in the recorder's office of the county where such lands are situated, or any burial ground that may have been used as such for ten years shall not be subject to sale on execution, to dower, nor to compulsory partition: Provided, that the lands so appropriated and set apart as a private burial ground shall not exceed one acre in area or one hundred dol-

lars in value; and provided further, that nothing contained in this section shall be so construed as to exempt any such burial ground or cemetery property from being liable for special assessments for street improvements when such assessment is levied by an incorporated city in this State.''

The city of Sikeston, under section 8491, Revised Statutes 1919, is authorized to hold real estate ''for public cemeteries.'' It stands admitted that the community mausoleum mentioned in this record is ''in the public cemetery.'' The argument presented in support of the proposition that the entombment space here in question was private in nature and subject to execution is: (1) That the community mausoleum was constructed on a plot or tract that was not platted; and (2) that the property levied upon and sold exceeded $100 in value. It will be noticed that sections 1085 and 1086 are identical except the words ''or property'' instead of ''appropriated and'' are used after the word ''lands'' in the first line of section 1086, and the second proviso in section 1086. And defendant argues that the use of the words ''or property'' in section 1086 makes it certain that the property here in question, without regard to value, is exempt from execution if it is in a public cemetery.

Section 1085 has come down without substantial change since first enacted in 1855. [Revised Statutes 1855, sec. 1, p. 331.] It would appear that something in the nature of a reverse fluke occurred, the result of which has been to give rise to what now appears as section 1086, Revised Statutes 1919. In 1907, Laws 1907, page 86, an act was passed, the purpose of which as appears was to ''amend section 5216 of chapter 86, Revised Statutes of the State of Missouri of 1899 by adding after the word 'value' in the last line of said section, the following words.'' Then follows the language as now appears in the second proviso in section 1086, Revised Statutes 1919. After this language the proposed amendment continues by providing that said section ''when so amended shall read as follows, to-wit.'' Then follows a section numbered 5216 identical with what is now section 1086. By reference to the Revised Statutes of 1899 it is apparent that the section intended to be amended was section 5215, Revised Statutes 1899, instead of section 5216. Section 1, of the amendment of 1907, wherein all the proposed changes were supposed to be stated, made no reference to any change except the addition of what appears now as the second proviso in section 1086. The words ''appropriated and'' in the transition became ''or property.'' It is apparent that no amendment was intended except the addition of the second proviso. What was clearly intended to be merely an amendment of section 5215, Revised Statutes 1899, was carried into the revision of 1909 as a new section, and has since so appeared. In this situation defend-

ant's case is not aided by the use of the words "or property" in section 1086.

Will the fact that the plot or tract upon which the community mausoleum was erected was not in the platted portion of the cemetery deprive it of its public character and make of it no more than a private burial place? Section 8492, Revised Statutes 1919, respecting public cemeteries owned by cities of the fourth class, provides that "the cemetery lots shall be conveyed by certificate signed by the mayor, countersigned by the clerk, under the seal of the city, specifying that the purchaser to whom the same is issued is the owner of the lot described therein by numbers as laid down upon the official map or plat of such cemetery made by the city." Section 8492, it would seem, contemplates that the cemetery be laid off in lots and that a plat thereof be filed with the recorder before the sale of lots or space therein. But we find no statute specifically requiring that the city shall, before selling lots or space in its cemetery, file with the recorder a plat thereof showing the lots, etc. Nor do we find any statute prescribing what the consequences will be if such is not done. Section 1080 Revised Statutes 1919, dealing with public cemeteries owned by any "person or association" provides that such person or association "shall cause to be recorded in the proper office a plat of such cemetery or graveyard, showing its walks, ways, roads, avenues, and the number and sizes of the burial lots therein and the names of their respective owners, so far as such cemetery has been laid out in lots and sold; and annually on or about the first day of January such person or association shall file for record—so as to continue from year to year the original plat until it shall show the whole tract subdivided into lots and the owners names—a corrected plat showing new thoroughfares . . . and all lots with the names of the owners," etc.

Under section 1080 a plat of the lots, after the first plat of lots sold is filed, is only required to be filed annually. It does not appear in that section or elsewhere what the consequences respecting the public nature of the burial place would be if such "person or association" were to sell a burial lot in an unplatted portion. In the absence of a statute prescribing the consequences, respecting the question of a public or private burial place, of selling a burial place in an unplatted portion of a public cemetery, we must look to the general rules of law applicable for the solution of the question. There are but two classes of cemeteries, public and private. [Woolbridge v. Smith, 243 Mo. 190, l. c. 198, 147 S. W. 1019.] It stands admitted that the community mausoleum is in a public cemetery. The statute exempts from execution any lands set apart for public burial grounds when so set apart and so recorded.

1925] TURNER ET AL. V. PENMAN ET AL. **193**

Counsel in their written argument say: "This land, it is true, was in the same enclosure with land being used as a public cemetery, but had not yet been platted as such, and had not yet been dedicated as such." If by this argument it is meant to say that the mausoleum site is not in a public cemetery then it is in the face of, and contrary to, the admission that the site is in a public cemetery. We construe this admission to mean that the mausoleum site is in a tract of land dedicated by the city as a public cemetery. The Sikeston Cemetery is either public or private. It cannot be both. It is admitted to be public and in addition the statute, section 8491, only authorizes the city to own a public cemetery. Also it appears in the deed from the mausoleum company's trustee to Yount and Galeener that a plat of the mausoleum was on file with the recorder. We so infer such to be the fact from the description in the deed which description is set out, supra.

It is our conclusion that the failure of the city to plat that portion of its public cemetery upon which the community mausoleum was erected does not deprive the mausoleum of its *status* as a burial ground in a public cemetery. The judgment should be reversed and the cause remanded with directions to set aside the sale and the order overruling the motion to quash, and to sustain the motion to quash the levy, and it is so ordered. *Cox, P. J.,* and *Bailey, J.,* concur.