34184. SUTTLES, Tax Collector, *v.* HILL CREST
CEMETERY INC.

DECIDED DECEMBER 5, 1952—REHEARING DENIED DECEMBER 19, 1952.

344

*Harold Sheats, Standish Thompson, Durwood T. Pye, E. A. Wright,* for plaintiff in error.

*Phillips, Johnson & Williams,* contra.

WORRILL, J. (After stating the foregoing facts.) The Constitution of 1877, article 7, section 2, paragraph 2 (Code, Ann., § 2-5002), authorized the legislature to except from taxation places of burial. The legislature, in pursuance of that constitutional authority, enacted in 1878 (Ga. L. 1878-9, p. 33; Code, § 92-201) that places of burial be exempt from taxation. The Constitution of 1945, article 7, section 1, paragraph 4, also authorized the legislature to make such exemption, and in pursuance of that authority the legislature enacted in 1946 (Ga. L. 1946, p. 12; Code, Ann. Supp., § 92-201) that places of burial be exempt from taxation. It is conceded that the land acquired by Hill Crest Cemetery Inc. in 1932 was for a cemetery, that the land on the east side of Stanton Road has been and was being so used at the time of the assessment for taxes of the land on the west side of the road, but that the latter, not having received any interments and no part thereof having been offered for sale for burial purposes, is not a place of burial within the constitutional and legislative provisions above mentioned. A "cemetery" is defined by Webster as "a place or ground set apart for the burial of the dead." It is, therefore, synonymous with graveyard, burial ground, and place of burial. Peterson *v.* Stolz, (Tex. Civ. App.) 269 S. W. 113, 117, citing 11 C. J. 50. While, as pointed out by the plaintiff in error, exceptions are to be strictly construed, the construction must not be strained or unreasonable. The land here involved is part of a larger area which was acquired by Hill Crest Cemetery Inc., under a deed containing a restriction that it was to be used as a "cemetery for human beings . . and for no other purpose." After its acquisition the corporation caused to be run through the entire area northwardly a road which subsequently became known as Stanton Road, bisecting the property into approximately two equal parts. It was later extended to Campbellton Road. All of the land on the east side of the road has admit-

tedly been used for burial of the dead, and the purpose of running the road in the first instance was to afford "a means of ingress and egress to and from places of burial in the *cemetery.*" (Italics ours.) It appears from the record that in a short time "there will be no further room or space for burial on the east side of the road." Hill Crest Cemetery Inc. was "a bona fide corporation engaged in the business of conducting what is popularly known in East Point, Georgia, as Hill Crest Cemetery, in which it opens graves, buries dead bodies of white persons in the burial places developed therein for a consideration," and which corporation "sells burial lots in said cemetery." In a growing community like East Point, a fact of common knowledge, where the increase in population must necessarily be accompanied by a like increase in deaths, manifestly it is a prudent and salutary practice on the part of one engaged in the business of providing burial places for the dead to anticipate such deaths and not to be suddenly faced with the awkward necessity of procuring appropriate space. Of course, if the land purchased and held be out of proportion to the real requirements, it might be questioned whether the excess land could be said to be held in good faith for future interment of the dead. But here, where it is not contended that any disproportion exists, no question of good faith is raised. It is admitted that in a short time the space on the east side of Stanton Road will be completely filled with interments. This road was constructed, not merely to afford ingress and egress to and from the east side, but to the west side as well. Apparently the acquisition of the land on the west side of the road was entirely consistent with a humane and sentimental regard for the needs of the dead. Conceivably, too, it may be a very practical and pardonable usage, while owning two portions of what is admittedly a cemetery or place for burial, to first develop and sell the lots on the east side for burial purposes, reserving to some future time, when the necessities require it, the use and care of the other side with appropriate expenditures. See St. Stanislaus Church Soc. *v.* Erie County, 275 N. Y. S. 84, 86 (2). The public policy to protect and encourage cemeteries arises out of the common wish of mankind to insure a fitting resting place for the dead, especially in crowded areas, while at the same time giving consideration to

the safety of the living and the saving of the public from the burden of maintaining them at its expense. See, in this connection, State ex rel. City of St. Paul *v.* Dist. Court of Ramsey, 114 Minn. 287 (131 N. W. 327); Cave Hill Cemetery *v.* Gosnell, 156 Ky. 599 (161 S. W. 980); Evergreen Cemetery *v.* Beecher, 53 Conn. 551 (5 Atl. 353). It has been held that exemption from taxation by constitutional or statutory provision is not lost by reason of the fact that the cemetery does not contain graves or has not been platted into burial lots. City of Wichita *v.* Schwertner, 130 Kan. 397, 401 (286 Pac. 266).

As stated by the plaintiff in error in his brief in this court, it is the use of the property and not the ownership which exempts it from taxation, but this does not mean that use is to be determined merely by whether or not an interment has been made at the time it is sought to be taxed. The inquiry is: Has the property been committed to use as a cemetery and is it being held in good faith for that purpose? The restriction in the deed by which Hill Crest Cemetery Inc. acquired the property as effectually fixed its status or destiny while owned by a private individual or corporation as if it had been expressly dedicated by the grantor. So far as appears, the corporation has never attempted to commercialize any part of the property, and it has been held in the same status as it was conveyed to it, namely, "for use as a cemetery for human beings." As stated in 51 Am. Jur. 613, §.646: "Of course, the setting aside of any acreage for cemetery purposes, whether commercial or eleemosynary must be predicated on good faith, the acreage set aside or reserved for future use must not be disproportionate in extent to the population of the community to be served and the reasonable expectation of the service to be rendered." In Mount *v.* Yount, 220 Mo. App. 187, 193 (281 S. W. 119), where it was held that certain entombment space in a mausoleum in a cemetery was held to be "a burial ground in a public cemetery," it was said: "Counsel in their written argument say: 'This land, it is true, was in the same enclosure with land being used as a public cemetery, but had not yet been platted as such, and had not yet been dedicated as such.' . . It is our conclusion that the failure of the city to plat that portion of its public cemetery upon which the community mausoleum was erected does not

deprive the mausoleum of its *status* as a burial ground in a public cemetery." In Mountain View Cemetery Co. *v.* Massey, 109 W. Va. 473 (155 S. E. 546), where it was held that undeveloped and unsold portions of a cemetery held in reserve for interment purposes were exempt from taxation under a constitutional and legislative provision, it was said: "Recurring now to the suggestion that only the portions of a cemetery property which have been actually sold should be exempt from taxation, it will be observed that such construction of the statute might easily result in gross hardship in its operation. Portions assessed for taxation for a given year might very well be sold within a short time after assessment and actually put in use for burial purposes. If the tax were not paid, these very lots with dead bodies therein would be subject to sale to satisfy the tax."

The reasoning in the above-mentioned cases is adopted as sound, and the authority is sufficient for us to hold, as we do here, that the property in question was exempt from taxation under the Constitution and the statute. In addition, while there seems to be no case exactly in point in this State, *Georgia Mausoleum Co.* v. *City of Dublin*, 147 *Ga.* 652 (95 S. E. 233), is controlling in principle. We might have rested our decision on that case alone, but thought it pertinent and informative to set forth the pronouncements of different courts on the subject under consideration. In the Georgia case the following facts appeared in resisting a tax execution on certain unsold crypts. The City of Dublin conveyed a certain cemetery space to Georgia Mausoleum Company for the purpose of erecting thereon a mausoleum for the burial of the dead. The mausoleum was erected, but some of the crypts remained unsold at the time an execution issued and was levied. They could not legally be used except for burial purposes. This restriction applied to the ground upon which the mausoleum stood. The Supreme Court reversed the judgment of the trial court refusing an injunction against the taxing authority. It was held that the use to be made of the property and not the purchase and sale thereof determined the matter of taxation. Clearly the crypts which had not been disposed of were not being used for burial purposes, at the time of the execution, in the sense that interments had been made. However, the Supreme Court did not take the nar-

row view that use meant actual interment, but held that, since they were constructed for burial purposes, and not for the purpose of private or corporate income in commercial transactions, and could not be used for any purpose other than interment, they were exempt from taxation under the Constitution and legislative act in pursuance thereof. In reaching its conclusion it adopted the reasoning of Metairie Cemetery Assn. *v.* Board of Assessors, 37 La. 32, 35, to which it referred as authority. In that much-cited case it was held that "A cemetery set apart and used for burying the dead is a 'place of burial' with the intendment" of the Louisiana constitution. In that case land, and not crypts, was involved as in the present case, and it was said: "In other words, it [a cemetery] is, in the very language of the constitution a 'place of burial,' by which is meant undoubtedly a place dedicated and set apart for the burial of the dead. The attempt to restrict the meaning of the words of the constitution to the narrower import of tenanted graves, spots of ground actually occupied by buried corpses, is utterly vain. The words are to be interpreted according to the known habits and usages of the people, which are to congregate their dead in places set apart for that sacred purpose, encircled by holy influences and subject to regulations for preserving the decency, peace and sanctity of all their surroundings. What would be the security of those who venerate their dead if the tax gatherer might enter such sacred precincts and sell, at public outcry, the land adjoining their tombs to some publican who might build thereon a barroom or a brothel? . . The obvious intention was to give a constitutional sanction and guarantee to such ancient and habitual exemptions. We have not a doubt that this cemetery, as a whole, is a 'place of burial' within the intendment of the constitution. Then it is exempt from taxation, unless, under the proviso of the constitution, it is *leased* or *used* for purposes of private or corporate income or profit. That it is not *leased* for any purpose is fully proved. The evidence is equally perfect that it is not *used* for any other purpose than that of a cemetery, or for any purpose which yields any private or corporate profit or income. The sole fact, upon which is predicated the charge of use for corporate profit, is that the corporation sells plots of the ground to persons desiring to build tombs and

bury their dead therein, at prices which, if all were sold, would yield a profit on the investment. But, it is to be observed that such sales do not, in any manner, change the use of the property but rather preserves and confirms the use and dedication as a place of burial."

In the present case, as above pointed out, the land which is on the west side of Stanton Road and which is sought to be taxed, was restricted to use as a cemetery. It is not contended that the corporation has used or attempted to use it for lease, rental, or any commercial purpose for profit. Nor can it be said as a matter of law that its purchase originally by the corporation was not appropriate to burial needs of the City of East Point as they might arise thereafter. Under the above-named authorities we hold that it was exempt from taxation.

*Judgment affirmed. Sutton, C. J., and Felton, J., concur.*