S90G0859. MAYOR & ALDERMEN OF THE CITY OF
SAVANNAH et al. v. RADFORD.
(401 SE2d 709)

FLETCHER, Justice.
Radford brought suit against defendants/appellants arising out of

an incident alleged to have occurred during the burial of her deceased husband at Bonaventure Cemetery in Savannah. Radford's complaint alleged that employees of the city who were working in the cemetery, within the scope of their employment, interfered with the burial of her husband in a wanton and wilful manner, thereby causing Radford embarrassment and humiliation. She sought damages from the city for intentional and negligent infliction of emotional distress.

The trial court granted defendants' motion for summary judgment, holding that the claim was barred by the doctrine of governmental immunity because the city's operation of Bonaventure Cemetery was a governmental function and that the damages being sought were punitive in nature and could not be recovered from the city.

Radford appealed and the Court of Appeals reversed. Adhering to and relying on its decision in *City of Atlanta v. Rich*, 64 Ga. App. 193 (12 SE2d 436) (1940), the Court of Appeals found that although the cemetery "is open to the public and used by the public at large for some recreational purposes . . . such ancillary uses do not alter the fact that at the time of the incident in question [the city's] employees were performing a task related solely to the cemetery function of the facility," which function was held in *Rich* to be ministerial. *Radford v. Mayor &c. of Savannah*, 194 Ga. App. 839 (392 SE2d 23) (1990).

1. We granted certiorari to consider whether operation of a cemetery, open to the public and operated at a loss by a municipality, is a governmental or ministerial function. We hold that operation of Bonaventure Cemetery by the City of Savannah is a governmental function. In reaching our holding, it is not necessary that we overrule *Rich* because the situation now presented by Bonaventure Cemetery is distinguishable from the situation presented by Oakland Cemetery in 1940.

In *Rich*, the Court of Appeals acknowledged that, in many instances, the operation of parks and public auditoriums by municipalities is considered a governmental function even though the parks and auditoriums may each provide both free and pay entertainments because both are still primarily operated for "the public as a whole, and not exclusively for pay members of the public." *Rich*, supra at p. 196. The *Rich* court goes on to hold that:

> The sphere of operation of such auditoriums [and] parks . . . includes primarily the general public, and thus the lesser function (pay entertainments) becomes merged with and into the greater function (free entertainments or other operations for the benefit of the public at large), and they together become an entity which is primarily used by the general public. Id.

Though such may not always have been the case, Bonaventure Cemetery is now being operated primarily for the benefit of the public at large rather than being operated primarily for the benefit of paying members of the public who purchase burial lots therein as was the case in 1940 with Oakland Cemetery in *Rich.* Bonaventure Cemetery is open to the general public, from 8:00 a.m. until 5:00 p.m. seven days a week, for use by all persons whether they own a burial lot or have relatives buried in the cemetery. It is a historic site of both local and national interest; it is listed in tour guides and local touring companies conduct daily sightseeing tours of the cemetery. It is used regularly by the public at large for picnics on the bluff overlooking the adjacent Wilmington River, fishing in that river, relaxation and other recreational pursuits.

It is clear that Bonaventure Cemetery is now operated by the City of Savannah primarily for cultural, historical, and recreational purposes for the benefit of the general public and only secondarily for the use of the paying members of the public as a burial ground. In holding that the operation of Bonaventure Cemetery is a governmental function, we find that the operation of the cemetery as a burial ground for paying members of the public has become the lesser function of the cemetery and that such lesser function has merged with and into what has become the greater function of the cemetery property which is its operation for cultural, historical, and recreational purposes for the general public. As a result, the operation of this cemetery is now a governmental function.

2. Our ruling in Division 1 of this opinion makes it unnecessary for us to reach the question of whether damages under OCGA § 51-12-6 may be recovered from a municipality.

*Judgment reversed. All the Justices concur, except Smith, P. J., and Hunt, J., who dissent.*

SMITH, Presiding Justice, dissenting.
A cemetery is a cemetery, is a cemetery, and;
A park is a park, is a park, and;
never the two shall meet — except in this Court.
Black's Law Dictionary, 5th edition defines cemetery as, "a graveyard; burial ground. Place or area set apart for interment of the dead. Term includes not only lots for depositing the bodies of the dead, but also, *avenues, walks,* and *grounds,* for *shrubbery,* and *ornamental* purposes." (Emphasis supplied.) See also *Suttles v. Hill Crest Cemetery,* 87 Ga. App. 343 (73 SE2d 760) (1952).

A park is, "an enclosed *pleasure-ground* in or near a city, set apart for the *recreation of the public.*" Black's Law Dictionary, 5th edition. (Emphasis supplied.)

In 1869, Major W. H. Wiltberger formed the Evergreen Cemetery

Company of Bonaventure. This was the beginning of what is now known as the Bonaventure Cemetery.[1] The cemetery comprises 90 acres and has approximately 6,100 multi-grave lots. There is no mention of a park. The duties of the cemetery division of the Department of Public Services are directly and solely related to the use and maintenance of the cemetery and lots therein. See Savannah City Code, Part 4, Chapter 3, Secs. 4-2003 - 4-3007.

At the time of the burial ceremony appellee did not observe any recreational structures or conveniences nor any signs designating any type or place of recreation on the premises. There were no park signs.

John Wright Jones testified by affidavit that:

> I am a resident of Savannah, Chatham County, Georgia. . . .
> I am familiar with the property known as Bonaventure Cemetery in Savannah, Georgia, and have personally observed this property on a regular basis during the past 30 years. I have observed that there have never been any fishing piers, picnic tables, barbecue pits, playground, concession stands, or any other recreational facility or device located at Bonaventure Cemetery. I have observed that Bonaventure Cemetery has never contained any signs or other indications of any public use other than as a cemetery. While I have observed this property many times during the past 30 years, and several times during 1984 and 1985, at no time have I observed any employee of the cemetery performing any work unrelated to the use of the premises as a cemetery.

On appellee's first visit to Bonaventure Cemetery after her husband's death, she was given a document and was informed that these rules applied to Bonaventure Cemetery. She also stated that she saw no one engaged in any activity in the cemetery connected with recreation or other enterprise unrelated to the operation of a cemetery.

The document given to appellee had a heading in capital letters:

CITY OF SAVANNAH, GEORGIA
Department of Cemeteries

The City of Savannah seal is located in the upper left-hand corner of the document with the address: Post Office Box 1027, Savannah, Georgia 31402. Again, there was no mention of a park.

This document contains, among other things, three very enlightening statements. First, it states, "This letter is to acquaint you with

---

[1] This was in keeping with his father, Captain P. Wiltberger's wishes as he had planned to create a cemetery out of his estate.

the rules and regulations that govern the operation of the *City of Savannah Cemeteries.*" (Emphasis supplied.)

The second one was, "These rules and regulations are designed to protect and enhance the beauty and *integrity* of our cemeteries and to provide you with the *services furnished by the City.*" But how can the *"integrity of our cemeteries"* be protected if the cemetery is a park? If the services are furnished by the City for a price, including the appellee's responsibility to pay cemetery workers for overtime services performed after 5:00 p.m., are not the city's actions ministerial?

The third statement was, "The City of Savannah shares with you the *solemn obligation to make cemeteries permanent* and beautiful symbols of faith, love, and devotion." (Emphasis supplied.) Note that the entire document deals with cemeteries, not parks. If Bonaventure is a park and/or used as a park, has not the City of Savannah violated its *solemn obligation* to *make Bonaventure Cemetery permanent?* You cannot have a *permanent* cemetery and a park one and the same. Note that the document did not state that the cemeteries would be *permanent parks* or create *permanent parks out of the cemeteries.* How can the City fulfill its *solemn obligation* to make *cemeteries permanent* if that cemetery is turned into or used as a park? See *Suttles,* supra.

The majority states that, "It is clear that Bonaventure Cemetery is now operated by the City of Savannah primarily for cultural, historical and recreational purposes for the benefit of the general public and only secondarily for the use of the paying members of the public as a burial ground." If Bonaventure is now operated primarily for cultural, historical and recreational purposes, why is it that not one word relating to or extolling Bonaventure for such worthy causes is in the information pamphlet? Instead of pointing out the great cultural, historical and recreational purposes for the benefit of the general public, the pamphlet was confined to the rules and regulations of the cemetery. It also stated that the rules and regulations were designed "to protect and enhance the beauty and *integrity* of our cemeteries" (not parks).

Furthermore, the pamphlet pointed out that Savannah "shares with you the *solemn obligation to make cemeteries permanent* and beautiful symbols of faith, love, and devotion." If it is so clear that Bonaventure is now operated primarily for cultural, historical and recreational purposes, why was the pamphlet silent as to these purposes. Why were there no fishermen, picnickers, or cultural seeking, historical hunting, recreational minded witnesses produced by the city to testify on behalf of their beloved culture et al. enhancing park and the benefits gained therefrom? The reason is simple: it is not true.

The only testimony the city produced was by three affidavits

from present or former employees of the city.

Mr. Horace Magwood, a former employee, testified that in 1984 he was director of cemeteries of the Mayor and Aldermen of the City of Savannah. His duties included overseeing the operation and maintenance of the City cemeteries, including Bonaventure. He said that he was familiar with the history of Bonaventure as well as the current operation of the cemetery. He did not mention parks. The second witness, Mr. Williams, stated that he, Kenneth Riner and Jessie Hendrix dug the grave for the use by the Radford family and that he and Kenneth Riner closed the grave after the funeral. He also stated that his duties as a maintenance service worker for the City of Savannah included digging and closing graves in Bonaventure Cemetery. No park work was mentioned.

Finally, Mr. Jessie Hendrix stated that he was a maintenance supervisor for the City of Savannah and his duties included supervising and overseeing burials at the Bonaventure Cemetery and that he was the supervisor of the burial of Mr. Lloyd B. Radford. No park duties were mentioned.

You know that if this cemetery was used as a park these three men would have known and would have been asked such by the City. Mr. Hendrix knew enough about its operation to demand $70 for overtime for working after the 5:00 p.m., closing time for the cemetery.[2] Mr. Magwood knew enough about the monetary operation of the cemetery to state that Bonaventure lost money as a cemetery. I note that *Cleghorn v. City of Albany*, 184 Ga. App. 732 (362 SE2d 386) (1987), states that profitability is not the sole determination as to a cemetery's status. There was no mention by Mr. Magwood or anyone else that Bonaventure was a park or operated as a park.

Municipalities are not created to make money, indeed they are not allowed to compete with private enterprises for the purpose of profit. They are created by the legislature to serve people, not for people to serve them. *City of Rome v. Justice*, 40 Ga. App. 196 (149 SE 88) (1929). Any and all city activities or operations are carried out for the public's benefit, even if for only a limited segment of the public.

The fact that the City of Savannah operates Bonaventure under a "City of Savannah Municipal Cemetery Ordinance," Savannah City Code, Part 4, Chap. 3, Secs. 4-3001; 4-3032, is in keeping with Georgia law. Under Georgia law, cemetery operations are uniformly placed in the same category as waterworks, airports, hospitals, street mainte-

---

[2] In a letter to Mr. Leo Radford, dated August 17, 1984, Mr. Briar Gore, Assistant to the City Manager, acknowledged that the family had been requested to pay about $70 for city overtime and that as a result, a new rule was enacted that any funeral starting after 3:30 p.m. would be charged $70 in advance for overtime payment.

nance and transportation services. Cemeteries are not in the same category as recreational facilities such as pools, golf courses and parks. See definition of parks, Black's Law Dictionary, supra; *McCrary Engineering Corp. v. City of Bowdon*, 170 Ga. App. 462 (317 SE2d 308) (1984).

The City's assertion that Bonaventure Cemetery is a park and not a cemetery without more will not sell. The cemetery is still being used as a burial site and any unused areas are dedicated for the purpose of graves. This land was dedicated as a cemetery and it cannot be used for anything else until and unless the City enacts some ordinance to alter this. The record is bare of any such action. See *Suttles*, supra.

There is nothing in the record to show that the City of Savannah has by ordinance designated Bonaventure as a park or joint park and cemetery. Does not common sense tell you that if the cemetery was being operated under the "City of Savannah Municipal Cemetery Ordinance," that another ordinance would have to be enacted to change the cemetery to a park or combination cemetery and park? The City would have been informed that legally this would have to take place. This is especially true where the cemetery is still being actively used.

The City of Savannah admitted that it operated Bonaventure as a cemetery. In paragraph 2 of her complaint, appellee alleges: "At all times relevant hereto, defendant City through its agents, servants or employees, was operating a cemetery (Bonaventure) and said individuals were acting within the scope of their employment by defendant City." The defendant, the City of Savannah, answered paragraph 2 as follows: "The City admits the allegations of paragraph 2 of plaintiff's complaint. . . ." Then the City goes on to say if its employees did what was alleged, that the City could not be liable because the acts would be ultra vires. At no place in the City's answer does it allege or plead that Bonaventure Cemetery is a park, used as a park, or cemetery-park combination. If Bonaventure was a park, was this not the time and place to say so? Sure it was. This park idea was late "a cropping" and just thrown in.

After reading the foregoing and then reading the majority opinion, you would not recognize the fact that we are talking about the same cemetery.

I violently disagree with the majority when it states that Bonaventure Cemetery is now being operated primarily for the benefit of the public at large, rather than being operated primarily for the benefit of paying members of the public who purchase burial lots therein.

The only evidence to support the above statement is the affidavits of three City employees present at the funeral. Where are the affidavits of the City Manager, the Mayor, and the tour guides, or just

one person not connected with the operation of the cemetery to testify about all of the cultural, historical and recreational benefits that he or she has, or will derive, from their long contemplative times spent among the graves. Thus Bonaventure is still being used primarily as a cemetery. It has 6,100 multi-grave lots. How can anyone deny that Bonaventure's primary function is as a cemetery. No one, not even the workers, claim that its operation as a cemetery is no longer paramount. There are enough funerals continuing to be held at Bonaventure that a new rule was made as to when overtime would begin. The document handed out spoke of cemetery use and how the City was dedicated to keeping it so.[3]

This idea of the majority that the Bonaventure Cemetery is now being operated primarily for the public and not for the benefit of the paying members is a figment of someone's imagination totally lacking support in the record.

This case is controlled by *City of Atlanta v. Rich*, 64 Ga. App. 193 (12 SE2d 436) (1940). I fully agree with the Court of Appeals. The employees were involved in the opening and closing of the grave. This was their duty based upon a contract the City has with the appellee following a purchase of a cemetery lot. This was work for pay and they were at the time of the alleged tort involved in a ministerial act and liable for any injury irrespective of any cultural, historical and recreational benefits that one might derive from the cemetery.[4]

HUNT, Justice, dissenting.

Why, in the operation and maintenance of this consecrated tract of land, cannot the City of Savannah be engaged in two functions — one governmental, the other ministerial? Why is it necessary to blend them into what the majority perceives as the major function — the operation of a park, or into what Presiding Justice Smith perceives to be the major function — the operation of a cemetery? As can be seen by the opposing factual recitations, this debate has not been, by any means, clearly resolved.

The more reasonable approach is to recognize that both functions are involved and to resolve the issue of liability by deciding which function relates to this particular case. Plainly, the work at the grave site was performed as a ministerial duty of the City of Savannah and the claim should not be barred by governmental immunity. On this issue the Court of Appeals should be affirmed. Therefore, I respect-

---

[3] If Bonaventure Cemetery is a park as contended by the City, the way to publicize such is by pamphlets and brochures. It would have been so easy to introduce one of these as evidence.

[4] In its order overruling the summary judgment, the court said, "[T]his court holds that the operation of Bonaventure Cemetery is a governmental function. . . ." There are no findings of fact by the court upon which it bases its ruling.

fully dissent.

DECIDED MARCH 15, 1991 —
RECONSIDERATION DENIED MARCH 28, 1991.

Oliver, Maner & Gray, Patrick T. O'Connor, Wiseman, Blackburn & Futrell, James B. Blackburn, for appellants.
Ashman & Zipperer, Alex L. Zipperer III, Ralph R. Lorberbaum, Edgar L. Crossett III, for appellee.