# CHARLESTON.

## WHITE *v.* ROMNEY.

Submitted September 6, 1911.   Decided October 24, 1911.

EMINENT DOMAIN—*Authority to Exercise Power—Water Supply.*
> A municipal corporation, when necessary to do so to obtain a water supply for the use of the town or city, may condemn land, though situated outside the corporate limits.   (pp. 606 to 611).

Petition by John Baker White for writ of prohibition against R. W. Dailey, judge, and the town of Romney.

*Writ Denied.*

*J. E. Chilton* and *John Baker White,* for petitioner.

*J. S. Zimmerman* and *J. Sloan Kuykendall,* for respondent, Town of Romney.

BRANNON, JUDGE:

The town of Romney is a municipal corporation holding its charter under chapter 47 of the Code. In June, 1911, the town filed in the circuit court of Hampshire county a petition seeking to condemn a small parcel of land having upon it a spring of water, for the purpose of supplying the town with an adequate supply of water for the public use, which land is the prop-

erty of John Baker White. The said White seeks a writ of prohibition from this Court to prohibit the said circuit court and town of Romney from entertaining and prosecuting the said condemnation proceeding. The ground on which White rests his claim for the prohibition is that as the land to be condemned lies outside the corporate limits of the town, and therefore the town has no power or right to condemn the land. He claims that whilst the town can construct and operate water works within its limits, it can not condemn land outside the corporate limits for supply of water. He cites the case of the *City of Charleston* v. *Reed,* 27 W. Va., 681, and other cases holding that "A municipal corporation can exercise the following powers and no others: first, those granted by express words in its charter or the general statute under which it is incorporated; second, those necessarily or fairly implied in or incident to the powers thus expressly granted; and third, those essential to the declared purpose of the corporation, not simply convenient, but indispensable." White claims that no statute gives the town power to go outside its limits to thus acquire land for water purpose.

The Code in ch, 47, sec. 14, says, that the mayor, recorder and councilmen of a city, town or village shall be a body politic and corporate and have perpetual succession, sue and be sued, purchase and hold real estate necessary to enable them the better to discharge their duties, and needful for the good order, government and wellfare of said city, town or village," Section 28 says, "The council of such city, town or village shall have plenary power and authority therein * * * * to erect or authorize or prohibit the erection of gas works, electric works or water works in the city, town or village." White lays special emphasis upon the presence of the word "therein" and the words "In the city, town or village" found in sec. 28. He says those words show an intent on the part of legislature to limit water works and all their appliances to the town boundary. We do not think that such was the intent of the use of those words. They were used merely as descriptive of the territory of operation of water works. It can not be possible that those words were meant to prohibit a town or city, when necessary, to go outside its limits to get a necessary supply of water; they were intended as de-

scriptive of the use of purpose of the water works. Thus we see from those sections that a town is a corporation given power to establish water works and to acquire real estate necessary to enable them to discharge their functions and needful for the welfare of the town. Can we not say that land is highly necessary for the construction of water works? Can we not say that land for water works is necessary for the welfare of a town? Thus the town has the power to acquire land for such purposes by purchase by the letter of sec. 14. The legislature has there declared that land is needful for a town in some cases where necessary to perform its functions. A town may so acquire by purchase.

It may acquire land by condemnation, ch. 13, Acts of the Extraordinary Session of the Legislature of 1907, Code Supplement of 1909, page 256, amending chapter 42 of the code, in clause 8 says that land may be ocndemned "by any city, town or village or company, now incorporated or hereafter incorporated for the purpose of establishing water works for the public use, to acquire any land necessary for the construction of reservoirs, dams, cisterns, and other water works which may be necessary for its purposes and land and right of way for pipes, conduits for the conveyance of water and so much water from any springs, rivers and creeks as may be necessary for its purposes." Here is a very broad, wide power of condemnation given municipal corporations for water purposes. It contains no language limiting the power of condemnation to lands within the municipal limits. It says "any land" "any springs, rivers and creeks." It gives right to condemn lands necessary for water works purpose without any limitation to municipal limits. We may reasonably say that if such restraint on the power of the town was intended it would be found in the statute. We know that a supply of water for a town or city is highly useful and essential, in many intances indispensable. The Legislature knew that in many instances it would be impossible to secure a sufficient supply of water within the municipal limits. It knew that in many of the towns and cities of the state water is obtained from beyond their boundaries. It intended to confer this indispensable power without restraint to the corporate

limits. In most cases the power of condemnation, if so limited, would be worthless. It does seem unreasonable to say that these statutes taken together must be construed to limit the power of the municipality in the maintenance of water works to the municipal boundary. We have to insert such a limitation into the statute by judicial construction, and that too against public utility and thus cramp the powers of municipalities in the discharge of essential functions. Such a construction would be against public policy. It would be ruinous to towns and cities. In 28 Cyc. 605 we find it stated that as a rule municipal corporations may not acquire property without their limits, but that, "the legislature, however, may confer such power, either in express term or by necessary implication; and there are cases in which, without any special grant of such power, it has been implied as necessary to carry out powers granted." A number of cases are cited for this proposition. *Keller* v. *Riverton,* 161 Pa. so holds. Our Legislature gives the towns power to have water works, and the power can be implied to get water beyond their limits. We find it stated in 28 Cyc. 954 that "although a municipality has usually no authority outside its limits, yet authority to act beyond its bounds is sometimes implied on ground of special necessity." In 28 Cyc. 917 it is laid down that if a municipal corporation is "authorized to construct such a system they have implied authority when necessary to go beyond their limit and acquire property to obtain an outlet so as to make it effective." This relates to sewerage. Why is not the same power implied for water works? It is abundantly established, and indeed virtually conceded in the brief for White, that a city or town may extend its sewer outlet beyond its limits. Elliot on Roads and Streets in the last edition, sec. 559 says "The right to provide for the drainage of streets and to construct and repair sewers is generally granted to cities in express terms by their charters or by the statute governing their incorporation; but, without any express grant of such authority, the right to exercise it is regarded as incident to the general power to maintain and control streets. The authority of the municipality as to such matters may extend even beyond the city limits; and, unless prohibited by charter or statute, the city has inherent power to contract for and construct works beyond the

corporate limits for the discharge of sewage where the same is necessary." In the case of the city of *Richmond* v. *Gallego Mills Co.,* 102 Va. 165, it is held that a municipal corporation may maintain necessary sewers outside its bounds as incident to its general powers to maintain and control its streets, without any express grant of authority for that purpose. This is sustained by much authority as to sewerage. Mc. Quillin, Municipal Ordinances, sec. 513. See *Langley* v. *Agusta,* 98, Amer. St. Rep. 134, holding this power in municipalities, and citing many authorities in its support, including the leading case of *Coldwater* v. *Tucker,* 24 Am. Rep. 601. I quote the following from 10 A. & E. Ency. of Law 238: "The authority vested in a municipal corporation to construct sewers carries with all subsidiary power necessary to make it effective, and hence if, in the construction of sewers, it becomes necessary to make use of private property the municipality has an implied power to acquire such property by lawful means." This would include similar power as to water works. The power to have sewer outlets, pest houses and cemeteries is unquestionable and comes from necessity for the public weal. Why not as to water works? Water is essential, and indispensable for the comfort and health of the people of the town, necessary in draining streets, for household purposes, for carrying off sewerage. Sewers can not be operated without water. Why does not necessity give to towns an implied power to seek a source of supply outside of town by fair implication? For myself I would not appeal to power by implication, because I think our statute of 1907, giving broad power of condemnation, without limitation to town boundary, may be said to be an express grant of power to condemn for water supply outside the town. But if wrong in this, I do assert such power by implication. Here is a town given power to maintain water works and the power of condemnation for water works, and when it is necessary it has implied power to get water outside its limits. The authority cited for White, *Reed* v. *Charleston,* and many other cases lay down the legal proposition that towns have powers "necessarily or fairly implied in or incident to expressly granted powers and those essential to the declared purpose of the corporation." *Christie* v. *Malden,* 23 W. Va. 667, *Richards* v. *Clarksburg,* 30 *Id.* 491, and other cases. When under such

authority it is necessary for a town to go outside its limits for water it has the clear implied power to do so to carry out the duties imposed upon it. We therefore discharge the rule and refuse the writ of prohibition.

*Writ Denied.*