Rockingham, }
Nov. 6, 1940. } No. 3178.

MAINE-NEW HAMPSHIRE INTERSTATE BRIDGE AUTHORITY

*v.*

RICHARD H. HAM.

*Sewall, Varney & Hartnett* and *Henry M. Fuller* (*Mr. Fuller* orally), for the plaintiff.

*William H. Sleeper* (by brief and orally), for the defendant.

PAGE, J.   Pursuant to an interstate compact entered into by this State and the State of Maine, the plaintiff was incorporated in both States to erect and operate in trust for the public a toll-bridge over the Piscataqua River designed for highway and railroad use.   A further purpose of the corporation is to provide and improve suitable approaches to the bridge.

The compact (Laws 1936, Special Session, *c. 4, s.* 6) provides that the Authority may acquire any "real property and rights or easements therein, deemed by it necessary or desirable for its purposes and to use such property."   The Authority was incorporated in New Hampshire (section 6 of said act) with the power to acquire such rights by condemnation, in the manner provided in sections 18–28 of P. L., *c.* 19.   The present proceedings appear to conform to those sections.

The petition for condemnation avers that the acquisition of the

rights in question "is desirable and necessary in order to relocate the high tension line of the New Hampshire Gas & Electric Company." These lines formerly ran across the layout for the New Hampshire approach. It may be assumed that the new construction made it in the judgment of the Authority both "desirable and necessary" that the transmission line be removed from its former location to another point where it would be necessary to cross the defendant's land. It may even be assumed, for present purposes, that this was the only point where the crossing could be made without undue interference with the use of the approach.

If, as a consequence, the public good required the crossing of the defendant's land, the utility could have acquired easements for that purpose by condemnation proceedings before the Public Service Commission. P. L., c. 244. It might be true that, pending the acquisition of such rights, which might take considerable time, the Authority would be in a quandary. If the Authority waited for the conclusion of such proceedings, the work on the approach and the opening of the bridge might be seriously delayed. An alternative would have been for the Authority to condemn the old transmission line. The destruction of the line would probably have interrupted electrical service to the public until such time as the utility could have procured a new right of way. In either event, there would have been a delay or interruption of a public use.

In this situation the Authority undertook to take by the power of eminent domain an easement over the defendant's land, not for its own use but for the use of the utility. "In order to avoid delay in the progress of the construction of said new highway", the Authority filed a petition for condemnation "for the purpose of relocating said transmission line . . . and to convey the same upon its acquisition . . ." to the utility. The easement thus attempted to be taken has been in the possession and use of the utility for over a year, subject to continuous protest by the defendant.

Since the defendant does not deny the allegations of desirability and necessity, he concedes, as far as his rights are concerned, that the Authority might have condemned the old transmission line. *Piscataqua Bridge* v. *New Hampshire Bridge*, 7 N. H. 35, 67; *Backus* v. *Lebanon*, 11 N. H. 19; *Northern Railroad* v. *Railroad*, 27 N. H. 183, 194, 195. The power, though not expressly granted, might possibly be thought to have been clearly implied in the broad powers given to the Authority to condemn "any rights or easements . . . deemed by it necessary or desirable for its purposes."

But to the grant was added the phrase "and to use such property." It is fundamental that a legislative grant of power to condemn for a public use, being derogatory of common right, may be exercised only within the clear definition of the grant. The definition is bounded by the express words or the necessary implication of those words. Lewis, Eminent Domain (3d *ed.*), *s.* 371; *Thompson* v. *Company*, 78 N. H. 433, 434, and cases cited.

While the power to take the old transmission line was perhaps clearly to be implied, provided the locus was for the use of the Authority, the legislature has shown no intention to give the Authority power to acquire a substitute easement for the use of the utility. There is nothing to imply that the legislature desired the Authority to have such power, even in order to avoid delay in the construction of the new approach. We do not say that the legislature could not have granted such power and thus have conferred on the Authority either sole jurisdiction or concurrent jurisdiction with the Public Service Commission; but no such grant can be found upon the express words or clear implication of the act before us.

*Petition dismissed.*

BRANCH, J., dissented: the others concurred.