# OCTOBER, 1940.

CITY OF CARUTHERSVILLE, A MUNICIPAL CORPORATION, APPELLANT; MRS. C. G. SHEPARD, NELLE LEE DORROH, MRS. W. D. BYRD, N. W. HELM, J. L. LAFORGE AND L. A. FERGUSON, RESPONDENTS (PLAIN-TIFFS), v. JOHN G. FARIS, G. V. FARIS, AND CHARLES (CHARLIE) FARIS, APPELLANTS, (DEFENDANTS).—146 S. W. (2d) 80.

Springfield Court of Appeals, December 14, 1940.

606

*Von Mayes* and *Corbett & Peal* for appellants.

*Ward & Reeves* and *Fred L. Henley* for respondents and appellant City of Caruthersville.

TATLOW, P. J.—This is a condemnation proceeding seeking to condemn land to enlarge a cemetery.

The petition has two prongs; that is, it presents two separate and perhaps inconsistent theories. The six individual plaintiffs seek to condemn the land under the power of eminent domain, which they claim is conferred upon them by section 14066, Revised Statutes 1929, as representatives of the public, to enlarge a public cemetery. The City of Caruthersville seeks to condemn the land under the power of eminent domain, which it claims is conferred upon it under Section 6852, Revised Statutes 1929, relating to cities of the third class. The allegations of the petition as to the alleged cause of action of the individuals is as follows:

"Plaintiffs further state that the individual plaintiffs constitute more than five persons of the public in interest who reside near and within the vicinity of Little Prairie Cemetery, a public cemetery and burial ground of the dead, owned, controlled and maintained by the City of Caruthersville, Missouri.

"Plaintiffs further state that said Little Prairie Cemetery is located immediately south and within three miles of the said City of Caruthersville, and embraces and includes therein about nine acres of ground; that said cemetery is now practically and completely filled with graves and that all of the burial space therein is practically exhausted, and by reason thereof it has become and is absolutely necessary to enlarge said public cemetery and burial ground, and that the plaintiff City and the said individual plaintiffs as members and constituting a part of the public, are interested in the enlargement of said burial ground and cemetery, and that the enlargement thereof is in the interest of the public in order to acquire grounds for the burial of the dead; and that public necessity and convenience require the taking and condemning of the following described parcel of land in Pemiscot County, Missouri, belonging to the defendants, John G. Faris, G. V. Faris and Charles (Charlie) Faris, to-wit:"

Then follows a description of the 4.29 acres sought to be condemned.

The allegations of the petition, with reference to the alleged cause of action in favor of the City, are, in addition to the above allegations, that it is a city of the third class with full power and authority to condemn property for public purposes; and the land sought to be condemned is within three miles of the city and is less than 160 acres.

The defendants interposed a demurrer to the petition, alleging, as grounds therefor, the following:

"1. That it appears upon the face of the petition that there is a misjoinder of parties plaintiff, in that, the suit is brought on behalf of the City of Caruthersville, a municipal corporation, and on behalf of certain individuals who claim to represent the public and the parties plaintiff are not united in interest, but claim in different capacities.

"2. That so far as the plaintiff, the City of Caruthersville, is concerned the petition wholly fails to state any cause of action in favor of said plaintiff against the defendants, or either of them.

"3. That there is a defect of parties plaintiff and defendant in this cause, in that, there are parties interested in the subject matter of the action who are neither made plaintiff or defendant therein."

The defendants no doubt could have required the plaintiffs to elect upon which cause of action the city or the individual defendants would proceed. They did not do so and have presented the case on a joint abstract and on joint briefs. The court sustained the demurrer as to the City of Caruthersville and overruled it as to the individual defendants. It then appointed commissioners who assessed the damages that the defendants had sustained through the taking of their property, in the sum of $1179.75. The defendants filed exceptions to the report, as follows:

"1. That the damages so assessed are greatly inadequate and greatly less than just compensation to defendants as to the land described in said report and in the petition for condemnation herein.

"2. That the petition does not state facts sufficient to constitute a cause of action.

"3. That the Court is without jurisdiction of the subject-matter of the proceedings herein for the reason plaintiffs have no right to condemn said land for cemetery purposes under the law and the allegations of the petition herein."

The decree of the court, omitting the caption and appearance of counsel, provides as follows:

". . . plaintiffs pay into court for the use and benefit of said defendants the sum of Eleven Hundred Seventy-Nine and 75/100 ($1179.75) Dollars, the amount of the award made by the Commissioners heretofore appointed herein. Thereupon the defendants withdraw their motion heretofore filed to dismiss plaintiffs' suit on the ground plaintiffs had not deposited in court the amount of damages so assessed by the Commissioners.

"Thereupon the court takes up for consideration the exceptions to the report of the Commissioners filed herein by the defendants, and the court overrules that part of said exceptions attacking the sufficiency of the petition herein, and that part of said exceptions attacking the jurisdiction of this court over the subject-matter of the

proceedings herein. Thereupon the parties announce ready for trial, on the petition and exceptions to the report of the Commissioners relating to damages and the trial proceeds, all parties waiving a jury, and after hearing the evidence and being fully advised in the premises the court doth find that the defendants have been damaged by the appropriation of the real estate hereinafter described in the sum of Eleven Hundred Seventy-Nine and 75/100 ($1179.75) Dollars.

"It is therefore ordered, adjudged and decreed that the defendants have and recover of the plaintiffs the sum of Eleven Hundred Seventy-Nine and 75/100 ($1179.75) Dollars, their damages as found as aforesaid, and it is further ordered, adjudged and decreed that the plaintiffs have and recover of the defendants the title and possession for public cemetery purposes and the enlargement of Little Prairie Cemetery in Pemiscot County, Missouri, the real estate described in and set out in plaintiffs petition herein, located in Pemiscot County Missouri and described as follows: (describing it). The court further adjudged orders and decrees that the defendants shall without delay deliver up to the plaintiffs full and complete possession of the real estate described as aforesaid for use as aforesaid, and the court further orders that the cost of this proceeding accruing prior to the time of filing exceptions to the Report of Commissioners be taxed against the plaintiffs, and that the costs accruing subsequent to the time of filing said exceptions be taxed against the defendants."

The defendants appealed from the judgment and decree condemning their land and the City appealed from the action of the court in sustaining the defendants' demurrer as to it. On the oral argument of the case counsel for the individual plaintiffs (and respondents here) asserted with much confidence the right of the individual plaintiffs to condemn the defendants' property. They also asserted with less confidence the right of the city to condemn, frankly conceding that they entertained some doubt as to the power of the city to condemn the property.

## I.

We will consider first the alleged cause of action in favor of the individual plaintiffs, which is based upon Section 14066, Revised Statutes 1929, which, so far as necessary for the consideration of this case, provides:

"Whenever it shall become absolutely necessary to enlarge any public burial ground or cemetery, and when the public, to the number of five or more persons, interested in the enlargement of said burial grounds or cemetery, and the owner or owners of the adjoining land, cannot agree as to the price to be paid for the same, or for any other cause cannot secure a title thereto, the public, to the number of five or more persons, may proceed to condemn the same," etc.

This section is a part of Chapter 124, relating to cemeteries. The original statute out of which the present chapter has grown, appeared

as one section, constituting Chapter 24, Title "Burial Grounds", Revised Statutes of 1856. It related to burial grounds, either for public or private use, when the deed for burial purposes is recorded in the office of the county where the lands were situated, or to lands that may have been used as burial grounds for ten years, and exempted them from sale under judgments and for taxes, and limited private burial grounds where the value was not over fifty dollars, and an area of no more than one acre. The Revised Statutes of 1865, Chapter 84, page 390, contained two sections as follows:

"Section 1. Any person desirous of securing family burying ground or cemetery on his or her lands, may convey to the county court of the county in which the land lies, any quantity of land not exceeding one acre, in trust for the purpose above mentioned, the deed for which to be recorded within sixty days after the conveyance; and such grounds, when so conveyed, shall be held in perpetuity as burying grounds or cemeteries for the use and benefit of the family and descendants of the person making such conveyance.

"Sect. 2. When lands shall have been conveyed and recorded as provided in the preceding section, the respective county courts shall have, and are hereby required to exercise, a superintending control over the same; and for any trespass on such burying ground or cemeteries, may cause the offender or offenders to be prosecuted and punished, as in other cases of trespass, and fined in any sum not exceeding five hundred dollars."

These sections relate only to a family burying ground or cemetery and make no mention, as did the original act of 1856, of public burial grounds.

Chapter 86, Revised Statutes 1879, is the same as Chapter 84, Revised Statutes 1865.

Section 938, Revised Statutes 1889, empowered the county court to take and hold grants or bequests and to apply the same or the income thereof for the improvement of any such family burying ground or cemetery.

Section 939, Revised Statutes 1889, is the same as what is now Section 14066, Revised Statutes 1929. This section first appeared in the Revised Statutes of 1899 as Section 5207.

In the Acts of 1901, page 54, a new section was added as follows:

"Section 5217a. When lands shall have been continuously used as a public burial ground for a period of ten years or more and such land has not been deeded to the public for the purpose of a burial ground, a title may be obtained to such lands in the way and manner as is provided for the enlargement of burial grounds in chapter 86, section 5217 of the Revised Statutes of Missouri, 1899."

Observe that the original Act of 1856 applied to burial grounds, either public or private, and that, from the revision of 1865 down to the revision of 1889, no mention was made of a public burial ground or

cemetery. The Act of 1901 provided for the creation of a public burial ground by a user for that purpose for a period of ten years; it also recognized that such burial grounds could be created by a deed to the public for burial purposes. The Laws of 1927, page 141, which are now sections 14059 and 14060, relate to both public and private cemeteries. It is apparent that, since 1901 at least, burial grounds or cemeteries have been divided into two general classes, either public or private. This is perfectly apparent from the reading of what is now Chapter 124, Revised Statutes 1929. It is directly so decided by our Supreme Court in the case of Wooldridge v. Smith, 243 Mo. 190, 147 S. W. 1019. In that case, which was dealing with private or family burial grounds, the court held:

" . . . The statute as to family burying grounds not only requires a deed, but it requires the *record* of such instrument. To our mind this statutory method is exclusive, and if so, there is no family burying ground in which plaintiffs could have any legal rights. . . ." [l. c. 199, 200.]

In that case it is also held:

"The purchaser of a lot in a cemetery, though under a deed absolute in form, does not take any title to the soil. He acquires only a privilege or license to make interments in the lot purchased, exclusively of others, so long as the ground remains a cemetery. . . ." [l. c. 201.]

Counsel for the individual defendants contend that, because the Little Prairie Cemetery is a public cemetery, Section 14066, Revised Statutes 1929, necessarily applies to it. We think that this is a *non sequitur*.

While, as heretofore stated, there is no possible doubt but what cemeteries are divided into private and public burial grounds, this division is a general one and it does not follow by any means that all public cemeteries recognized by Chapter 124, *supra,* possess the same characteristics. On the contrary, it is perfectly apparent that the public cemeteries so recognized possess entirely distinct and separate characteristics, as follows:

1. There are public cemeteries recognized by this chapter which are under the entire supervision of the county court of the county where they are situated, or some responsible organization or individual directly interested in the cemetery, designated by the court, dedicated to the public at large for cemetery purposes, in which title to the easement is vested either in the public or in the county court as trustee for the public. Our Constitution recognizes cemeteries in connection with churches. [Article 2, Section 8.]

2. In public cemeteries such as the Little Prairie Cemetery, the public easement is vested in the city of the third class, for the primary purpose of enabling the city to dispose of the lots in the cemetery to private purchasers who desire to make interments therein. The deed, .

although absolute in form, conveys, not the fee to the soil, but the exclusive right in the purchaser to make interments therein, the city, in its corporate capacity, to manage, control, supervise and preserve the cemetery for the exclusive purposes aforesaid.

3. A cemetery association incorporated for cemetery purposes under Article 10 of Chapter 32, Revised Statutes 1929, relating to "benevolent", etc., associations, and particularly Section 4999, Revised Statutes 1929, which expressly provides for a corporation "to maintain a cemetery". Such a cemetery, so incorporated, possesses substantially the same characteristics as a city owned cemetery.

4. An unincorporated voluntary association, the title to which can only be held through a trustee. [Normandy Consolidated (School) District v. Harral, 315 Mo. 602, 286 S. W. 86.]

5. Where the owner of land dedicates it for a public cemetery and plats it for the purpose of selling lots for interment. Such a cemetery perhaps may be also incorporated under the 13th paragraph of Section 4940, Revised Statutes 1929, relating to manufacturing and business companies, as follows:

"Thirteenth—For any other purpose intended for pecuniary profit, or gain not otherwise especially provided for, and not inconsistent with the Constitution and laws of this State: . . ."

Turning now to Section 14066, Revised Statutes 1929, under which the individual plaintiffs assert the right to condemn the land, it is provided:

". . . the public, to the number of five or more persons, interested in the enlargement of said burial grounds or cemetery, and the owner or owners of the adjoining land, cannot agree as to the price to be paid for the same, or for any other cause cannot secure a title thereto, the public, to the number of five or more persons, may proceed to condemn the same."

Under this provision they must be a part of the general public. They must be interested in the enlargement of the cemetery as the public as a whole is interested therein. It seems to us that there is no possible escape from the conclusion that this section applies only to a public cemetery, the title to which is vested in the public at large or in the county court as the trustee for the public, where the cemetery is not platted into lots and no individual has any separate right of interment, but in which any of the public may make interments. Counsel for the respective parties have cited various Missouri cases dealing with public and private cemeteries. The only case, to our mind, that has any particular or direct reference to the question here involved is the case of Shiel v. Walker, 114 Mo. App. 521, 90 S. W. 124. In that case the court says:

"This is a proceeding begun under Revised Statutes 1899, section 5217, to condemn lands for the enlargement of a public burial ground. And, also, under section 5217a of Sessions Acts, 1901; p. 54, to

condemn an existing burial ground. The trial court sustained a demurrer to the evidence offered in behalf of the petitioners and they appealed.

"It appears that about thirty years ago defendant platted into burial lots about two acres of his farm. That the plat contained two hundred lots of sufficient size for eight graves or burials. That of these defendant has sold and deeded to various persons, up to the beginning of this proceeding, one hundred and thirty lots. That in 1903 defendant laid off an addition to said burial ground of two acres, containing one hundred and fifty lots, which are held for sale by him upon like terms as the original lots, though up to the beginning of this proceeding none had been sold.

"These petitioners, to the number of five, as before stated, seek to condemn the original grounds as a public burial ground and to condemn the addition laid off thereto, as an extension of such original grounds. The following are the sections of the statute referred to above."

The court then quotes in full Section 5217, Revised Statutes 1899, which is now Section 14066, Revised Statutes 1929, and also quotes Section 5217a of the Session Acts of 1901, heretofore quoted, and then says:

"It will be observed that it is one of the objects of petitioners to condemn the title to the entire original burial ground now owned by defendant and a large number of other persons, to whom he has sold the greater number of the lots. Notwithstanding that the title to a greater part of the property is in these various parties and their deeds are of record, yet none of them are made parties and it is sought to destroy their title by a proceeding in which their grantor only is a party. The trial court rightly held that this could not be done."

Construing Sections 5217 and 5217a, *supra*, the court says:

". . . Those sections doubtless have reference to burial grounds found throughout the State, which have been set apart for such purpose, but have not been platted and kept under the ownership and supervision of the proper owner or owners—grounds, which the public used and yet no one in particular with any superior right therein, or interest in the management thereof. The provisions of the statute were intended to make certain the title to such property and to vest a right in the public to use them. And so the right was given to enlarge such grounds from the surrounding lands when it became absolutely necessary."

Whether the construction that the court put upon the statute in that case was necessary for a decision of the case, or whether it is an *obiter dictum,* is, we think, unimportant. It seems to us that it is the only possible construction of which the statute is permissible. To give the statute the broad construction contended for by the individual plaintiffs in this case would make it applicable to all of the public cemeteries

above enumerated, none of which have any of the characteristics called for by Section 14066, Revised Statutes 1929, except No. 1, *supra*, where the title is in the public where the cemetery is under the supervision of the county court or some responsible organization or individual directly interested in the cemetery and designated by the court, and where there is no separate ownership, where the lands are not platted, and where the public generally has an equal right of interment as long as there is room therefor in the public cemetery. Whether there is any such public cemetery now in existence in the State is unimportant. The statute, in our opinion, contemplates that there were such public cemeteries. [Fore v. Hoke, 48 Mo. App. 254.] If they no longer exist, then Section 14066 is a dead statute and no longer has any meaning.

In the instant case, the petition does not undertake to define the interest of the individual plaintiffs in the cemetery. It merely pleads a legal conclusion. The only conceivable interest that these individuals could have in the cemetery is that they are the managing directors or board of the cemetery, or that they are individual lot owners therein, or both. Such a separate and distinct interest does not make them the public to the number of five or more persons interested in the enlargement of the city's cemetery, within the meaning of the statute, *supra*. On the contrary, in our opinion, it affirmatively appears that they could not, and do not, have such public interest in the city's cemetery that the statute requires to qualify them to proceed under Section 14066, Revised Statutes 1929.

The court, in our judgment, erred in overruling the demurrer interposed by the defendants as to the right of the individual plaintiffs to condemn the lands of the defendants, and, for this reason, the judgment of the trial court must be reversed.

## II.

As to whether the case should be reversed outright without remanding it, depends upon whether the City of Caruthersville, as a city of the third class, has the power, in its corporate capacity, to condemn the defendants' land for the purpose of enlarging its cemetery. We will next consider this question.

The power to condemn private property for a public purpose is in derogation of the common law and, hence, both the statute conferring the power and the proceedings under the statute are to be strictly construed in favor of the property owner. The charter of the city provides that it "may purchase, receive and hold real estate within or without such city for the burial of the dead". [Section 6719, R. S. 1929.] It also provides: "The city council shall have power to purchase, receive and hold real estate, as hereinbefore mentioned, for public cemetery purposes, either within the city or within three miles thereof". [Section 6826, R. S. 1929.] The statute relating to

cemeteries provides: "Any town, city or village in the State of Missouri may purchase, receive and hold real estate within or outside such city, town or village for the burial of the dead", *et cetera.* [Section 14068, R. S. 1929.] The city's charter also provides: "The council may purchase or condemn and hold for the city, within or without the city limits, within ten miles therefrom, all necessary lands for hospital purposes", *et cetera.* [Section 6807, R. S. 1929.] Its charter further provides as follows: "Private property may be taken by the cities of the third class for public use for the purpose of establishing, opening, widening, extending or altering any street, avenue, alley, wharf, creek, river, watercourse, market place, public park or public square, and for establishing market houses, *and for any other necessary public purposes*" (italics ours). [Section 6852, R. S. 1929.]

It seems to us that there is no possible escape from the conclusion that the last provision of the statute just quoted, "and for any other necessary public purposes", confers the power upon the city to condemn the property to enlarge its cemetery, unless the maxim *ejusdem generis* prevents such construction. The maxim, like the maxim "*expressio unius est exclusio alterius*", "is an aid to construction and not a rule of law. It can never override clear and contrary evidences of Congressional intent." [Neuberger v. Commissioner of Internal Rev., 85 L. Ed. page —, Advance Sheet No. 1, October Term, 1940, page 16, l. c. 19.] The general provision above quoted either confers the power upon the city to condemn the land to enlarge its cemetery *or it has no meaning.*

In a recent case in the District Court for the Western District of Missouri (a three judge court) it is said:

". . . The rule of *ejusdem generis* is relied on. . . . First of all, the rule *ejusdem generis* is a rule of construction only 'to be used as an aid in the ascertainment of the intention of the lawmakers, and not for the purpose of subverting such intention when ascertained.' [Mid-Northern Oil Co. v. Walker, 268 U. S. 45, 49, 45 S. Ct. 440, 441, 69 L. E. 841.] And it is quite apparent from a consideration of the whole act of which paragraph (15) is a part, that the intention of Congress was to make possible the consolidation of railroad properties", *et cetera.* [State of Texas v. United States, 6 Fed. Supp. 63, l. c. 65.]

It seems to us that it is quite apparent from a consideration of the various statutes, *supra,* that the Legislature intended to confer upon the city the power to enlarge its cemetery under the law of eminent domain, and, such intention having been ascertained, the rule of *ejusdem generis* does not apply.

There is another reason stated in the case last cited, why the rule does not apply to the instant case:

"The rule *ejusdem .generis,* moreover, does not apply here for another reason. The rule is that where in a statute general words follow the enumeration of particular classes, the general words will be construed as applicable only to things of the same general nature as those enumerated. The particular words of paragraph (15) are—'the anti-trust laws as designated in section 1 of the Act entitled "An Act to supplement existing laws against unlawful restraints and monopolies, and for other purposes," approved October 15, 1914.' But those are *all* of the anti-trust laws of the United States. The particular words, therefore, embrace *all* objects of their class. Application of the rule then would make meaningless the general language following the specific words—'all other restraints or prohibitions by or imposed under authority of (federal) law.' Where such a result would follow the rule does not apply. [Mason v. United States, 260 U. S. 545, 553, 43 S. Ct. 200, 67 L. Ed. 396.]" [l. c. 66.]

So, in the instant case, if the general clause does not apply to all necessary public purposes for which the city is authorized to acquire land, including the enlargement of its cemetery, then the words have no meaning and the court is confronted with the familiar rule that all of the words of the statute must be given a meaning if this can reasonably be done. It is perfectly apparent that these words can be and are given a meaning when construed to include the condemnation of property for the enlargement of the city's cemetery.

In Mid-Northern Oil Co. v. Walker, 268 U. S. 45-50, l. c. 49, 50, 69 L. Ed. 841-843, l. c. 843, it is said:

". . . The doctrine invoked is a rule of construction, to be used as an aid in the ascertainment of the intention of the lawmakers, and not for the purpose of subverting such intention when ascertained. Here, the enumeration of taxable things, including the general classes, property and assets, is so comprehensive that nothing remains to which the phrase in question can apply, unless to rights like the one here taxed; and to construe it as contended would, in effect, therefore, nullify it altogether. [Mason v. United States, 260 U. S. 545, 553, 554, 67 L. Ed. 396, 399, 400, 43 Sup. Ct. Rep. 200.] . . ."

This would seem to be entirely applicable to the instant case. The enumerations in Section 6852, *supra,* are so comprehensive that nothing remains to which the phrase in question can apply unless it applies to "all necessary public purposes". The only necessary public purpose that we have been able to ascertain, not enumerated in the section, or the right of condemnation, specifically provided for in some other statute, is the enlargement of the city's cemetery. If this clause does not apply to it, it has no meaning. The clause itself is definite by fixing a public purpose designated in the various statutes under which cities of the third class are incorporated, which is clearly announced by our Supreme Court, as follows:

"It is very clear to us that the principle of *ejusdem generis* cannot be applied here, nor yet the doctrine of *noscitur a sociis,* for the words 'street' and 'field,' appearing in the statute, are not even remotely related, and neither derives any color from association with the other, but each stands as the representative of a distinct class. The meaning, then, of the general expression 'or other place,' in the statute is not restricted or affected by the preceding particular words, which 'signify subjects greatly different from one another.'" [State v. Eckhardt, 232 Mo. 49, l. c. 53, 133 S. W. 321.]

As said in that case, the words "street" and "field" are not even remotely related. On exactly the same principle, the word "street" in Section 6852, *supra,* is not remotely connected with the other words therein—"watercourse", "market-place", "public park," or "market-house", and none of these words derive any color from association with another of said words; each stands as the representative of a distinct class. For this reason, as is directly decided by the Supreme Court in the case just cited, the rule of *ejusdem generis* invoked by the defendants in the instant case, has no application. That case is the last controlling opinion of our Supreme Court and is conclusive on us even if we were in doubt as to whether or not the rule there announced is correct—which we are not. For this reason we think, and so hold, that the trial court clearly erred in overruling the demurrer of the defendants as to the right of the individual plaintiffs to maintain this suit, and that it should have sustained the demurrer. It also erred in sustaining the defendants' demurrer to the right of the City of Caruthersville to maintain this suit to condemn the land for the purpose of enlarging its cemetery. While the defendants excepted to the commissioners' report for the reason that the damages assessed were clearly inadequate, the evidence relating thereto is not preserved in the abstract and we must presume that the finding of the trial court was supported by substantial evidence, and, hence, not subject to our review, and as it further appears from the decree in the case that the amount of damages has been deposited in the court for the use and benefit of the defendants, the case should be and is reversed with directions to the trial court to proceed as follows:

First, sustain the defendants' demurrer to the right of the individual plaintiffs to maintain this suit.

Second, to overrule the defendants' demurrer as to the city's right to maintain this suit and enter a decree approving the report of the commissioners and directing that the damages so assessed and paid into court be delivered to the defendants.

Third, that the title to the land in question be divested out of the defendants, and vested in the City of Caruthersville for cemetery purposes only.

As the individual plaintiffs acted only as figure heads and as the representatives of the city, and as the money deposited in the court

was the city's (this was admitted on the oral argument), the individual plaintiffs were merely improper parties, and the rights of the defendants were not prejudiced. Since this suit is a friendly one to determine the right of the city to condemn the defendants' property, the costs of the proceedings, including the costs in this court, should be taxed against the city. It is so ordered. *Smith* and *Fulbright, JJ.*, concur.