MARY C. BURNHAM & others *vs.* MAYOR AND ALDERMEN OF BEVERLY.

Essex.    May 12, 1941. — June 24, 1941.

Present: FIELD, C.J., DONAHUE, QUA, COX, & RONAN, JJ.

*Eminent Domain,* Purpose of taking, Necessity of taking. *Municipal Corporations,* Eminent domain, Airport. *Airport. Statute,* Construction. *Jurisdiction,* Justiciable question.

The necessity or expediency of the exercise of the power of eminent domain is solely a legislative question, but a determination of the question, whether such exercise is for a public purpose, is subject to judicial review.

The establishment of public airports is a public purpose for which land may be taken by eminent domain under proper statutory authority.

Section 14 of G. L. (Ter. Ed.) c. 40, as amended by St. 1933, c. 283, § 1, gave authority to the aldermen of a city other than Boston to take land for the purpose of a municipal airport, the establishment of which they had found to be required by public necessity and convenience.

The legislative history of § 14 of G. L. c. 40 through its sundry amendments precluded its being restricted to takings for highway purposes by the amendment by § 1 of St. 1933, c. 283, although the title of c. 283 was "An Act clarifying the law relative to taking land by eminent domain for highway purposes."

PETITION, filed in the Supreme Judicial Court for the county of Essex on January 28, 1941, for a writ of certiorari.

The case was heard by *Dolan,* J., who ordered the petition dismissed. The petitioners alleged exceptions.

*E. R. Anderson,* for the petitioners.

*P. Massarella,* City Solicitor, for the respondents, submitted a brief.

RONAN, J.  The question presented by these exceptions to the order of a single justice, which dismissed a petition for certiorari brought by the petitioners to quash proceedings of the respondents purporting to take their land for the purpose of establishing a municipal airport, is whether land can be taken by eminent domain, in behalf of a city, for such purpose.

The power to appropriate private property for a public use may, subject to the limitations expressed in the Constitution, Part I, art. 10, and arts. 39, 43, 49 and 51 of the Amendments, be exercised by the Legislature itself or it may be delegated by statute to the cities and towns.  Such statutes are in derogation of the rights of individual ownership in property and must be construed with reasonable strictness, so that no citizen shall be deprived of the use and enjoyment of his land except by a valid exercise of the appropriating power subject to which all private property is held.  *Glover* v. *Boston,* 14 Gray, 282.  *Lajoie* v. *Lowell,* 214 Mass. 8.  *Comisky* v. *Lynn,* 226 Mass. 210.  *Jenks* v. *Mayor & Municipal Council of Taunton,* 227 Mass. 293. *Holliston* v. *Holliston Water Co.* 306 Mass. 17.

Cities and towns are political subdivisions created for the convenient administration of government, and they possess only such powers as are conferred upon them either in terms or by necessary implication of enabling statutes. *Wheelock* v. *Lowell,* 196 Mass. 220.  *MacRae* v. *Selectmen of Concord,* 296 Mass. 394.  *Adie* v. *Mayor of Holyoke,* 303 Mass. 295.  They are separate units, possessing only the authority thus entrusted, and acting as instrumentalities of local self-government.  Nowhere is the limitation of their power more obvious than in the expenditure of funds raised by taxation.  Such funds can be expended only for a public purpose sanctioned by law.  The appropriation of money for "the establishment, maintenance and operation of public airports" is expressly authorized by G. L. (Ter. Ed.) c. 40, § 5 (35), and cities and towns may borrow within the limit of indebtedness for the establishment of public airports, including the acquiring of land, the construction of buildings and the surfacing of the landing and taking-

off field.  G. L. (Ter. Ed.) c. 44, § 7 (12).  The necessity
or expediency of the exercise of eminent domain is a legis-
lative function, but whether the purpose is a public one
is subject to judicial review.  *Boston* v. *Talbot*, 206 Mass.
82, 89, 90.  *Broderick* v. *Department of Mental Diseases*,
263 Mass. 124.  *Stockus* v. *Boston Housing Authority*, 304
Mass. 507.

The transportation of passengers and mail along definite
air lanes, on regular schedules, between several of our cities
has been conducted on a large and increasing scale for many
years.  Travel by air is preferred by many to travel by
land or sea.  Large sums have been invested in the develop-
ment and manufacture of airplanes and in the operation
of lines for service to the public.  Air traffic has become a
usual method of travel.  It has been employed extensively
in the transportation of persons on interstate journeys.
Besides, there is considerable flying by persons who own
or hire aircraft, most of which is confined within compara-
tively short distances from the field where the craft is housed.
Aviation has become a necessary and important branch of
the armed forces of the national government, and the use of
airplanes as an effective weapon of modern warfare has
been conclusively demonstrated.  The expenditure of mu-
nicipal funds to assist either the Commonwealth or the
Federal government in a local undertaking of a public
nature may be authorized by the Legislature.  *Merrymount
Co.* v. *Metropolitan District Commission*, 272 Mass. 457.
*Opinion of the Justices*, 297 Mass. 567.

An airport is as essential to aerial navigation as are docks
and harbors to marine navigation, terminals to automobile
bus transportation, and depots and freight yards to rail-
roads.  The establishment by a State or city of subways,
tunnels, docks, wharves, bridges and highways, the opera-
tion of ferries, and the rendering of financial aid to railroad
corporations and street railway companies, have all been
upheld as undertakings of a public nature.  The adequacy
of means for the transportation of the public at large is a
matter of public interest.  *Central Bridge Corp.* v. *Lowell*,
4 Gray, 474.  *Attorney General* v. *Boston*, 123 Mass. 460.

*Troy & Greenfield Railroad* v. *Commonwealth,* 127 Mass.
43. *Kingman, petitioner,* 153 Mass. 566, 570. *Commonwealth* v. *Williamstown,* 156 Mass. 70. *Prince* v. *Crocker,*
166 Mass. 347. *Browne* v. *Turner,* 176 Mass. 9. *Boston*
v. *Treasurer & Receiver General,* 237 Mass. 403. *Wright*
v. *Walcott,* 238 Mass. 432. *Goodman* v. *Provincetown,* 283
Mass. 457. *D. N. Kelley & Son, Inc.* v. *Selectmen of Fairhaven,* 294 Mass. 570.

The two statutes authorizing the expenditure of municipal funds for the establishment of airports, to which we
have referred, and G. L. (Ter. Ed.) c. 90, § 51, which was
inserted by St. 1939, c. 393, § 3, regulating the establishment, maintenance and supervision of airports and landing
fields, may be said to express legislative sanction of the
municipal airport as a public purpose. *Hubbard* v. *Taunton,* 140 Mass. 467. *Attorney General* v. *Williams,* 174
Mass. 476, 479. *Wheelock* v. *Lowell,* 196 Mass. 220, 223.
*Duffy* v. *Treasurer & Receiver General,* 234 Mass. 42, 50.
*Ducey* v. *Webster,* 237 Mass. 497. *Attorney General* v. *Lowell,* 246 Mass. 312, 320. *D. N. Kelley & Son, Inc.* v. *Selectmen of Fairhaven,* 294 Mass. 570, 574. The decisions in
other jurisdictions are to the effect that the establishment
and maintenance of public airports are municipal purposes.
*Ragsdale* v. *Hargraves,* 198 Ark. 614. *Krenwinkle* v. *Los
Angeles,* 4 Cal. (2d) 611. *Central Hanover Bank & Trust
Co.* v. *Pan American Airways, Inc.* 137 Fla. 808. *Swoger*
v. *Glynn County,* 179 Ga. 768. *Howard* v. *Atlanta,* 190 Ga.
730. *Mayor & Aldermen of Savannah* v. *Lyons,* 54 Ga. App.
661. *Wichita* v. *Clapp,* 125 Kans. 100. *Dysart* v. *St. Louis,*
321 Mo. 514. *State* v. *Johnson,* 117 Neb. 301. *Hesse* v.
*Rath,* 249 N. Y. 436. *Albany* v. *Bol,* 173 Misc. (N. Y.)
1047. *Goswick* v. *Durham,* 211 N. C. 687. *State* v. *Jackson,* 121 Ohio St. 186. *Ardmore* v. *Excise Board of Carter
County,* 155 Okla. 126. *McClintock* v. *Roseburg,* 127 Ore.
698. *Wentz* v. *Philadelphia,* 301 Penn. St. 261. *Spokane*
v. *Williams,* 157 Wash. 120.

We do not think that the city in acquiring and constructing an airport is acting any differently than when it engages
in the public projects we have already enumerated. The

respondents have found that public necessity and convenience requires the establishment of a municipal airport. With that legislative determination we have no right to interfere if the purpose is a public one and the respondents are authorized by law to take the necessary land in order to accomplish the purpose. In any event, the Legislature must have thought the use a public one as it authorized the city to expend public funds for the acquisition and establishment of the airport, and this is true even if we assume in favor of the petitioner that the statutes authorizing the expenditure do not permit the exercise of eminent domain. In this respect, we need point out simply that legislative sanction to purchase, in order to be valid, can rest only on the ground that the purchase will serve a public need. *Opinion of the Justices,* 175 Mass. 599, 600. *Wright* v. *Walcott,* 238 Mass. 432, 434.

The petitioners, however, contend that, even if the purpose is a public one, the city is without power to acquire the property by eminent domain. This contention rests upon the fact that the right to take is not expressly given by G. L. (Ter. Ed.) c. 40, § 5 (35), c. 44, § 7 (12), and c. 90, § 51.

If we accepted the premises set forth by the petitioners, we would not be led to the conclusion that they urge. These statutes do not stand alone. G. L. (Ter. Ed.) c. 40, § 14, as appearing in St. 1933, c. 283, § 1, provides, in so far as now material, that "The aldermen of any city . . . may purchase, or take by eminent domain under chapter seventy-nine, any land . . . for any municipal purpose for which the purchase or taking of land . . . is not otherwise authorized or directed by statute." One of the aims of this statute is to broaden and enlarge the powers of municipalities to purchase and take any land needed for a municipal purpose, where that power is not given by any other statute. *Byfield* v. *Newton,* 247 Mass. 46. *Walker* v. *Medford,* 272 Mass. 161. The authority that a city has apart from this statute to purchase a site for an airport is consistent with the power conferred by this statute to take the site by eminent domain. To construe the statute

otherwise would thwart the general aim and object of this legislation, which was to grant the right both to purchase and to take by eminent domain in cases where the city did not already possess both rights. This statute placed a serious limitation upon the right to purchase by prescribing the maximum price that could be paid, and it was not intended in those instances where the owners refused to accept such price that the city could proceed no further. It was to meet this situation that the Legislature extended the power to take. Ineffectiveness to achieve a statutory aim is not to be attributed to the legislative branch of government. *Flood* v. *Hodges,* 231 Mass. 252. *Central Trust Co.* v. *Howard,* 275 Mass. 153. The practical effect of the statute is to supplement the existing statutes by supplying the necessary power to purchase or take in all instances where both of these powers have not been specifically conferred by such statutes. *N. Ward Co.* v. *Street Commissioners of Boston,* 217 Mass. 381. *Nevins* v. *City Council of Springfield,* 227 Mass. 538. The statute in providing that aldermen and selectmen "may purchase, or take by eminent domain" treats both powers as distinct and separate. This view gains support from the presence of the comma after the word "purchase." *Commonwealth* v. *Kelley,* 177 Mass. 221. *Nickels* v. *Scholl,* 228 Mass. 205. The elliptical form of expression, which arises from joining both powers in the clause providing that this statute shall be operative if "the purchase or taking of land . . . is not otherwise authorized or directed by statute," does not obscure its meaning. It grants authority to purchase where such authority has not been granted by existing statutes, and it confers authority to take where such authority has not already been conferred by some statute. *Sirvint* v. *Fidelity & Deposit Co.* 266 N. Y. 482.

The petitioners next direct attention to the fact that St. 1933, c. 283, § 1, which was the most recent amendment of G. L. (Ter. Ed.) c. 40, § 14, was entitled "An Act clarifying the law relative to taking land by eminent domain for highway purposes." This chapter consisted of three sections and the last two were concerned with the taking of

land for highway purposes. The legislative history of what is now G. L. (Ter. Ed.) c. 40, § 14, shows many amendments for the purpose of bringing within the section new purposes for which land could be taken. Its scope was widened to permit land to be taken for all municipal purposes by St. 1915, c. 263, and narrowed by St. 1933, c. 283, § 1, which limited the operation of the statute to instances where the right to purchase or the right to take had not already been conferred upon the municipality by some other statute. The titles to St. 1915, c. 263, and St. 1925, c. 272, which changed § 14 to the form in which it appeared as G. L. (Ter. Ed.) c. 40, § 14, both contained a reference to the use of land for municipal purposes. The plain and obvious sweep of § 14 cannot be restricted to the purchase or taking of land for highway purposes merely by the title given to St. 1933, c. 283, which contains three sections, one of which amends G. L. (Ter. Ed.) c. 40, § 14, and the other two of which deal with takings for highway purposes. The title appropriately expresses the subject matter of these last two sections but it is not an accurate expression of the nature of the first section. *Proprietors of Mills* v. *Randolph,* 157 Mass. 345, 350. *Lorain Steel Co.* v. *Norfolk & Bristol Street Railway,* 187 Mass. 500, 505. *Shawmut Commercial Paper Co.* v. *Brigham,* 211 Mass. 72, 74. *Commonwealth* v. *Flax,* 259 Mass. 117, 122, 123. *Charles I. Hosmer, Inc.* v. *Commonwealth,* 302 Mass. 495, 501.

There is nothing in *Smith* v. *New England Aircraft Co. Inc.* 270 Mass. 511, contrary to anything here decided. It was pointed out at pages 520–521, after a discussion of statutes regulating height for the operation of aircraft, that these statutes "do not authorize the taking of private rights to promote such navigation. See now St. 1928, c. 350; G. L. c. 40, § 14, as amended by St. 1925, c. 272, as to airports." That statement was accurate as to the effect of the particular statutes there under consideration. In order that no inference would be drawn that the quoted statement meant that land for a municipal airport could not be taken by eminent domain, the court immediately directed attention to other statutes regulating the establishment of

such airports, and concerning which no opinion was there expressed. The contention of the petitioners that this decision is authority for the proposition that a city has no right to take land for an airport is untenable. It arises from wresting, in this instance, a part of a sentence from its context and dealing with the fragment alone, and seeking to give it a meaning and attempting to apply it to the determination of a question different from the one then before the court. *Cawley* v. *Jean,* 218 Mass. 263. *Swan* v. *Justices of the Superior Court,* 222 Mass. 542. *Eaton* v. *Walker,* 244 Mass. 23. *Taylor* v. *Albree, ante,* 248.

*Exceptions overruled.*