BERTAGNOLI et al. v. BAKER et al.

No. 7408.   Decided March 8, 1950.   (215 P. 2d 626.)

See 29 C. J. S., Eminent Domain, sec. 23. Eminent domain by municipal corporations, see note, 79 A. L. R. 515. See, also, 18 Am. Jur. 651.

*Riter, Cowan, Henriod & Finlinson,* Salt Lake City, for appellants.

*Cheney, Marr, Wilkins & Cannon,* Salt Lake City for respondents.

WOLFE, Justice.

The sole question presented by this proceeding is whether the Board of Education of Salt Lake City has been given the authority by the legislature of this state to condemn land outside the limits of Salt Lake City for the purpose of erecting a public school building thereon.

The Board of Education of Salt Lake City, hereinafter referred to as the School Board, commenced an action below against the petitioners to condemn a tract of land situated in part within the confines of the Salt Lake City School District, which are co-extensive with the limits of Salt Lake City, and part within the bounds of the Granite School District, which lies in Salt Lake County outside the limits of Salt Lake City. The petitioner, Bertagnoli, is the principal owner in fee simple; the other petitioners claim minor interests in the property. The petitioners demurred to the School Board's complaint on the grounds that it did not state facts sufficient to constitute a cause of action and that the complaint was uncertain in several respects, one of which being that it was not alleged or stated by a proper technical and legal description what part of the tract sought to be condemned lay within the limits of Salt Lake City and what part of the tract lay without the limits of the city. The petitioners also filed a motion that the School Board be required to make its complaint more definite and certain in the respects alleged in the demurrer. The demurrer was overruled and the motion was denied and the School Board was granted the right to enter onto the tract of land for the purpose of making examinations, surveys and maps. Thereafter, the petitioners petitioned this court for an alternative writ of prohibition which was granted, directing that the court below, the judges thereof, and the School Board, refrain from any further proceedings in the condemnation action, insofar as it pertains to

the real property situated without the limits of Salt Lake City until further order of this court. The petitioners do not question either the necessity for the taking of the property or the use to which it is to be applied.

In previous decisions of this court we have recognized that boards of education are public municipal corporations; that their powers are purely statutory; and that the legislature may authorize the governing authorities of school districts to do anything not prohibited by the ■ Constitution. Also, that the boards of education have only such powers as are expressly conferred upon them and such implied powers as are necessary to execute and carry into effect their express powers. *Chamberlain* v. *Watters*, 10 Utah 298, 37 P. 566; *Beard* v. *Board of Education*, 81 Utah 51, 16 P. 2d 900. Thus we must examine the statutes of this state to determine the extent of the authority given to boards of education to condemn land for proper purposes. Sec. 75-11-20, Utah Code Annotated, 1943, provides:

"Every board of education shall have power and authority to purchase and sell schoolhouse sites and improvements thereon, to construct and erect school buildings and to furnish the same, to establish, locate and maintain kindergarten * * * and grammar grades, high schools and industrial or manual training schools, * * * to purchase, exchange, repair and improve high school apparatus, books, furniture, fixtures and all other school supplies. * * * and may adopt by-laws and rules for its own procedure, and make and enforce all needful rules and regulations for the control and management of the public schools of the district."

Section 104-61-1, U. C. A. 1943, provides:

"Subject to the provisions of this chapter, the right of eminent domain may be exercised in behalf of the following public uses: * * * (3) Public buildings and grounds for the use of any county, city or incorporated town, or board of education; * * *."

In McQuillin on Municipal Corporations, Second Ed., Revised, Sec. 1619, pg. 546, it is stated that ■

"a municipal corporation cannot condemn land within the state but outside its corporate limits unless the power has been delegated by the legislature."

See Lewis, Eminent Domain, 3rd Ed., Sec. 371, for a similar statement.

When the power of eminent domain is given by statute, it is a well settled principle of law amply supported by cases from many jurisdictions in this country, that the extent to which the power may be exercised is limited to the express terms and clear implication of the statute. *City of Birmingham* v. *Brown,* 241 Ala. 203, 2 So. 2d 305; *Maine-New Hampshire Interstate Bridge Authority* v. *Ham,* 91 N. H. 179, 16 A. 2d 362; *Detroit G. H. and M. Railway Company* v. *Weber,* 248 Mich. 28, 226 N. W. 663; *U. S.* v. *Threlkeld,* 10 Cir., 72 F. 2d 464, certiorari denied 293 U. S. 620, 55 S. Ct. 215, 79 L. Ed. 708; *State ex rel. King County* v. *Superior Court for King County,* ... Wash. ..., 204 P. 2d 514; Lewis, Eminent Domain, 3rd Ed., Sec. 371. The right of eminent domain, being in derogation of the rights of individual ownership in property, has been strictly construed by the courts so that no person will be wrongfully deprived of the use and enjoyment of his property. *Burnham* v. *Mayor and Aldermen of Beverly,* 309 Mass. 388, 35 N. E. 2d 242, 135 A. L. R. 750; *City of Caruthersville* v. *Faris,* 237 Mo. App. 605, 146 S. W. 2d 80; *State ex rel King County* v. *Superior Court for King County,* ... Wash. ..., 204 P. 2d 514; *U. S.* v. *West Virginia Power Co.,* D. C., 33 F. Supp. 756. In the instant case the School Board contends that when the statutes are silent, as are our statutes, on the matter of whether a municipal corporation may condemn land outside its limits, the courts have generally refused to read a territorial limitation into the statute, but have permitted municipalities to condemn land outside their limits for proper municipal purposes when it has been necessary. Upon examination of the cases cited by the School Board in support of this contention, we find that in all of them there was involved the construction of a statute or statutes conferring upon municipalities the authority to condemn land for the purpose of constructing and maintaining either a culinary water system, a sewer system,

or a hydro-electric power plant. In all of these cases the courts concluded that the authority to condemn land outside the boundaries of the municipalities could be clearly inferred since any other construction of the statute or statutes involved would render worthless or seriously impair the grant of power to condemn for the given purposes. For example, in *White* v. *Town of Romney*, 69 W. Va. 606, 73 S. E. 323, 324, the condemnation statute there involved declared that land may be condemned

"by any city, town or village or company * * * for the purpose of establishing waterworks for the public use, to acquire *any land* * * * for the construction of reservoirs * * * and other water works which may be necessary for its purposes and land and right of way for pipes, conduits for the conveyance of water and so much water from any springs, rivers and creeks as may be necessary for its purposes." (Italics added.)

There the court reasoned:

"Here is a very broad, wide power of condemnation given municipal corporations for water purposes. It contains no language limiting the power of condemnation to lands within the municipal limits. It says 'any land,' 'any springs, rivers and creeks.' It gives the right to condemn lands necessary for water works purposes without any limitation to municipal limits. * * * The Legislature knew that in many instances it would be impossible to secure a sufficient supply of water within the municipal limits. It knew that in many of the towns and cities of the state water is obtained from beyond their boundaries. It intended to confer this indispensable power without restraint to the corporate limits. In most cases the power of condemnation, if so limited, would be worthless."

Similar reasoning was indulged in by the Supreme Court of Wyoming in *Edwards* v. *City of Cheyenne*, 19 Wyo. 110, 114 P. 677, 122 P. 900.

In *City of Rockford* v. *Mower*, 259 Ill. 604, 102 N. E. 1032, it was contended that the plaintiff city had no authority to condemn lands outside its limits for the construction of a sewer outlet because the statute contained no express provision authorizing condemnation of land by a city outside its limits. There the court relied upon one of its prev-

ious decisions, *Maywood Company* v. *Village of Maywood*, 140 Ill. 216, 29 N. E. 704, 705, where it said:

"We have already decided that a village may lawfully extend its sewers beyond its limits for the purpose of securing a suitable outlet * * *. In such case the improvement is within the corporate limits, and for the exclusive use and benefit, of the municipality. The extension and outlet only serves the purpose of giving practical effect to the sewer or system of sewage. No one will deny that a sewer in a city or village is a local improvement * * *. Hence, the power to construct them * * * is expressly given, and the right to also provide suitable outlets for the same, even outside of its boundaries, must result by fair and necessary implication; otherwise, the express power would in many instances be unavailing."

In *Public Service Co. of Colorado* v. *City of Loveland*, 79 Colo. 216, 245 P. 493, 500, the statute there involved authorized cities and towns to condemn and appropriate so much private property as is necessary for the construction and operation of water, gas, or electrical works. It was contended that inasmuch as the statute was silent as to the territorial limits of the rights granted, the City had no authority to condemn propery beyond its limits for the purpose of maintaining its hydro-electric plant. But the court rejected the contention, saying:

"In this case there is nothing to militate against the necessities of the city, but, on the contrary, there is a double necessity or twofold reason for the existence and exercise of an implied power upon the part of the city to acquire land by condemnation, or otherwise, for public use outside its corporate limits: First, to get water power for the generation of electricity; and, second, to receive and distribute the load. We doubt if any city in the state is physically situated so as to permit of the construction or operation of such a hydro-electric plant wholly within its corporate limits. A construction to give the statute effect will be followed, rather than one to give it an absurd meaning and to render it nugatory."

Similar reasoning was employed by the court in *Board of Water Com'rs of City of Norwich* v. *Johnson*, 86 Conn. 151, 84 A. 727, 41 L. R. A., N. S., 1024.

The reasoning indulged in by the courts in the cases discussed above in which the statutory authority to condemn land outside corporate limits was found by implication, does not apply to the powers granted to boards of education. There is no persuasive reason why the ■ legislature contemplated that boards of education could not maintain efficient school systems without having the power to condemn land outside the boundaries of the district and thus intended by implication to grant them that power. This being so, the only natural conclusion to draw from the silence of the statute is that the legislature did not intend to confer extraterritorial powers of condemnation upon boards of education.

Counsel for the School Board has not cited, nor have we found, a single case in which the authority to condemn without the limits of a municipality has been inferred under circumstances substantially similar to those found in the instant case. In *City of Birmingham* v. *Brown,* 241 Ala. 203, 2 So. 2d 305, 309, under facts somewhat similar, the authority was denied. There the City of Burmingham endeavored to condemn real estate located without the corporate limits of the city for the purpose of a public park. A pertinent statute, Laws Ala. 1915, § 15, p. 298, provided that

"cities shall have full power to condemn for any municipal or public purpose *any* land or interest therein by the exercise of the right of eminent domain. * * *." (Italics added.)

The City contended that the phrase "for any municipal or public purpose any land" without limiting it to land within the corporate limits, was a grant of power to condemn land without the corporate limits. The court held that such a construction was "entirely too broad," and would render wholly unnecessary a subsequently enacted statute expressly granting to cities the right to condemn land for wharves outside their limits. The principle of law that statutes conferring the right of eminent domain must

be strictly construed in favor of the landowner was relied upon by the court.

Similarly in Utah, as in Alabama in the case of public parks, there are subsequent enactments by the legislature which lead us to the conclusion that the legislature by its silence did not intend to impliedly confer extra-territorial powers of condemnation upon boards of ■ education. In 1947, the legislature authorized boards of education to participate in the joint construction or operation, or both, of a school attended by children within the district and children residing in adjoining districts, either within or without the state. Sec. 75-11-26, U. C. A. 1943, Chap. 84, Sec. 1, Laws of Utah, 1947. Had boards of education prior to that enactment possessed the authority to construct schools without the bounds of their districts, it is doubtful that there would have been any necessity for the 1947 enactment.

The respondents argue that because by Sec. 19-4-3, U. C. A. 1943, counties are expressly given the power to acquire and hold land only within their boundaries, the legislature presumably intended not to so limit the power of boards of education else it would have expressly done so. The difficulty with the respondents' argument is that the legislature intended cities to have the authority to acquire property outside their limits and to construct or authorize the construction of waterworks outside their limits, but it made that intent known by express language and did not leave it to be derived by implication. See Secs. 15-8-2 and 15-8-15, U. C. A. 1943.

Thus it follows that the authority contended for by the School Board not having been expressly given and not being clearly inferable from our statutes, must be denied it. Under the authorities on this subject, power cannot be derived from the doubtful inferences which support the School Board's claim of authority. The alternative writ hereto-

fore granted is made permanent. Each party to bear his own costs.

PRATT, C. J., and WADE and McDONOUGH, JJ., concur.

LATIMER, Justice.

I concur.

I believe it well to emphasize the concept that the right to condemn property is in derogation of common rights and permits the taking away from a land-owner the property he desires to retain. A man's home may be taken by the state or one of its political subdivisions if the governing body believes it necessary for a public purpose. This is a drastic method of taking when considered from the viewpoint of the person whose property is condemned. Accordingly, we must jealously guard the individual's rights and not infer the authority unless the express purpose of the legislation demands that the power be vested in the school board.

In the present litigation we are faced with inferring that the legislature intended to grant to the Board of Education of Salt Lake City the right to condemn property outside of the district for school purposes. The legislative history of schools and school districts in this state argues otherwise. Most legislation dealing with school boards and districts suggests that the power and authority of the board cannot be exercised beyond the territorial limits of a particular district. The only principal exception that I find in the statutes is the authority granted to adjoining school districts to construct and operate schools jointly for the benefit of the children of all districts. This grant of authority seems to me to negative the inferential grant of the power to condemn outside of a district as the legislative enactment only permits the right when exercised jointly with other adjoining districts. Whether under the perculiar circumstances of this case the Salt Lake City School District could

obtain the ends it now seeks by a bona fide agreement with the adjoining school district to condemn the land and jointly construct and operate this school is not before us and I, therefore, express no opinion as to that question.

If limiting a school board to condemnation within its district were to detract from, interfere with, or destroy the grant of authority to operate schools and construct school buildings, then I could see some good reason for inferring the right. But I neither can find, nor has anyone suggested, why it should be anticipated by a legislative body that the operations of a school board would be crippled by being unable to condemn property in other districts. True, we have a peculiar geographical situation facing us in this instance. But, concepts cannot be warped to meet individual needs and peculiarities.